Byron A. HICKS and Agnes C. Hicks, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 1160.

United States District Court
W. D. Virginia,
Roanoke Division.

May 17, 1962.

Joseph Wysor Smith, Hazlegrove, Shackelford & Carr, Roanoke, Va., for Hicks.

Thomas B. Mason, U. S. Atty., Roanoke, Va., and Louis F. Oberdorfer, Edward S. Smith, Myron C. Baum and J. Patrick Whaley, Dept. of Justice, Washington, D. C., for United States.

MICHIE, District Judge.

This case presents the question of whether or not the employees of the First National Exchange Bank of Roanoke (hereinafter called the Bank) are taxable upon portions of certain payments made by the Bank to itself as Trustee under a Profit-Sharing Plan, hereinafter called the Plan, adopted in 1957 as set forth in an indenture dated April 16, 1957, the Internal Revenue Service having, by letter dated September 6, 1957, found the Plan to meet the requirements of § 401 (a) of the Internal Revenue Code and to be entitled to exemption under the provisions of § 501(a), (26 U.S.C.A. §§ 401 (a), 501(a)).

Section II of the Plan provides, with certain limitations, that the Bank will contribute to the Plan in each calendar year a sum equal to 6% of its net operating income for that year as defined in that Section. Sections III, IV and V provide what is to be done with the various employees' shares of such profit-sharing contributions. The effect of these provisions may be summarized by saying that 40% of each employee's share of the profit-sharing contribution is irrevocably committed to go into the trust and to be retained by the trust, subject to the general provisions for subsequent payment to or upon the direction of the employee at retirement or other severance of employment, death, etc. But as to 60% of each employee's share of the profit-sharing contribution it is provided that it will be paid directly by the Bank to the employee unless, in the case of any employee, such employee on or before December 1st of each year in writing directs the Bank to pay the whole or a part of such 60% to itself as Trustee of the Plan.

The effect of these provisions is that by giving prior direction in each year to the Bank to do so the whole of each employee's share of the annual profit-sharing contribution will be paid into the Profit-Sharing Plan for the account of such employee but that if he fails to give such prior written notice to the Bank only 40% of his share of the annual profit-sharing contribution will be paid into the Plan and the remaining 60% will be paid in cash to the employee.

Of course there is no question but that any amount which is actually paid to the employee is taxable to the employee in the year in which it is paid. The controversy arises as to the taxability of payments as to which the employee gave

timely direction for them to be paid into the Plan for his account and which in fact were so paid.

In the instant case, which is of course a test case, Mr. Hicks, an employee of the Bank, gave timely notice on or before December 1, 1957 that he wished to have the 60% of his share of the profit-sharing contribution of the Bank for the year which, in the absence of such notice, would have been paid to him in cash paid instead to his account in the trust. The Bank of course complied with the direction and Mr. Hicks himself never received the sum in question.

However the Internal Revenue Service assessed a deficiency on the joint income tax return of Mr. Hicks and his wife for the year 1958 on the theory that the sum of $961.14, which was paid into the Plan for Mr. Hicks in that year pursuant to his direction and which would otherwise have been paid to him, was taxable income to him in the year 1958, the year in which he would have received it in the absence of such direction.

In due course the plaintiffs paid the alleged deficiency and filed a claim for refund which was refused. The plaintiffs then brought this suit to recover the amount of the alleged deficiency so paid.

The government's position is, precisely stated, that "the Bank paid this amount to itself as agent of the taxpayer and then, at his direction, paid it to itself *qua trustee*". Or, stated in another way, the 60% which would have been paid to Mr. Hicks had he not otherwise directed was constructively received by him.

I believe that the government is clearly right in its contention.

Many profit-sharing plans provide that contributions may be made by the employees in addition to the contributions that are made by the employer. If the Plan in question had so provided and Mr. Hicks had taken a portion of his salary after it had been paid to him by the Bank and contributed it to his account in the Plan, there could be no doubt but that he would be taxable on the entire salary as received by him and would receive no deduction for his subsequent investment of a part of it in the Plan.

But what we have here amounts to precisely the same thing. All Mr. Hicks had to do was to do nothing and he would have received this additional sum from his employer which would clearly have been additional compensation and therefore income to him. If, instead, he directs in advance that this amount be paid into the trust the economic situation is precisely the same as if the full amount had been paid to him as additional compensation and actually received by him and then contributed to the Plan. And the tax consequences should be the same.

This would seem to be perhaps peculiarly true where, as here, the employer and Trustee are one and the same. In the absence of direction the money would have been paid by the Bank to Mr. Hicks as soon as the amount thereof was determined. Whether such amount would have been run through the books of the Bank as Trustee and theoretically paid by the Trustee to Mr. Hicks would have been immaterial. All Mr. Hicks had to do was to do nothing and the money was his as additional compensation and therefore income. Surely this is about as clear a case of the constructive receipt of income as can be imagined.

The Bank set aside for Mr. Hicks his share of 60% of the profit-sharing contribution. It turned the money over to itself as Trustee of the Plan only because Mr. Hicks directed it to do so. Had he not so directed it would have paid that amount to Mr. Hicks. In turning it into the Plan instead of paying it to Mr. Hicks it was acting at Mr. Hicks' direction and as his agent. As such its receipt of this income was receipt by Mr. Hicks.

On the question of constructive receipt the leading case in the field is, of course, Helvering v. Horst, 311 U.S. 112, 61 S. Ct. 144, 85 L.Ed. 75. In that case the owner of certain coupon bonds detached certain coupons which fell due during the year and gave them to his son. In

due course the coupons were paid to the son but it was held that the donor realized income in the year equal to the face amount of the coupons. In the opinion the court said at p. 118 of 311 U.S. (p. 147 of 61 S.Ct.):

> "The power to dispose of income is the equivalent of ownership of it. The exercise of that power to procure the payment of income to another is the enjoyment, and hence the realization, of the income by him who exercises it."

Here the case is stronger. For in the Horst case the donor gave up not merely the immediate right to receive the income but all future control over it. But Mr. Hicks has merely directed that, instead of paying the income direct to him, it should be paid to a fund which will ultimately go to Mr. Hicks or his estate or someone else at his subsequent direction.

Taxpayer complains that the Internal Revenue Service, upon request, determined by letter dated September 6, 1957 that the Plan was a "qualified trust" under § 401(a) of the Internal Revenue Code, contributions to which are not taxable to the trust. And this is the case. Taxpayer's real complaint is not with respect to the advice which the Service gave but to the fact that it did not render any opinion as to the taxability to the employees of the 60% of their share of the annual profit-sharing contribution over which they have the power of disposition. But it was not asked to give advice as to that and it would be most unusual for it to volunteer such advice.

The taxpayer relies upon three cases all of which have some resemblance to the case at bar but all of which, I believe, are properly distinguishable: Max Asher v. Welch (D.C.Calif.), 39–1 U.S.T.C. 9279; Dillis C. Knapp v. Commissioner, 41 B. T.A. 23; and Estate of A. M. Berry v. Commissioner, 44 B.T.A. 1254. Curiously enough all three of these cases involved the same plan—the Sears-Roebuck Plan.

In the Asher case pretty much the same point we have here might well have been passed on but the court chose to decide the case on another ground. Asher was claiming that funds he received from a profit-sharing plan should have been taxed to him when they were paid into the trust and therefore not when he received them on retirement. But the court held that he had not reported them when they were paid into the trust and was therefore estopped to claim that they should have been then taxed. Of course no estoppel is involved here.

It is true that in the Asher case the court seemed to assume, without discussion, that the payments were properly taxable in the former years but the decision is merely to the effect that in any event Asher was estopped to make the claim.

In the Knapp case the taxpayer had also had a right to make withdrawals previously and therefore argued that he should have been taxed in those previous years rather than when he did withdraw his share of the fund upon retirement. However, under the terms of the trust there involved, had he exercised the right of withdrawal he could no longer have participated in the plan and the court held (three members dissenting) that this provision operated as a very substantial condition with respect to withdrawal so that in effect Mr. Knapp had not had in previous years an unconditional right of withdrawal. Of course in the case at bar Mr. Hicks' rights with respect to the remainder of his account or future contributions to the fund would not have been affected in any way had he in any year given no direction to the Trustee that his share of the 60% portion of the contribution for the year be paid into the fund with the result that it would have been paid to him.

The Berry case was similar to the Knapp case except that Berry had in an earlier year been permitted to pledge the securities in his share of the fund and it was argued that they were thus "made available" to him in such pre-

vious year without forfeiting his right to continue in the fund. And also it seems that Mr. Berry could have withdrawn portions of his account without forfeiting his right to remain as a participant in the fund. In that case the court held that the securities pledged had not in fact been withdrawn from the fund and with respect to the right to make partial withdrawals said:

" * * * However, such partial withdrawal would have reduced the quantum of his future participation in the fund and consequently would have required the surrender of such economic or financial advantage as the reduction in participation should entail. Also, such partial withdrawal could have been made only upon his making application therefor. He made no such application. Such right of withdrawal, unless exercised, did not effect a segregation or setting apart from the fund of any part of decedent's prorated credits therein. The right was not self-executing to effectuate such result. The credits, in the absence of an application for their withdrawal, remained in the fund as a part thereof under the control and operation of its trustees. The fund was administered as a whole, regardless of the credit therein of individual participants, and the earnings and profits in a current year plus the contribution to the fund in such year inured to the fund as a whole, but were credited to the participants to designate their respective pro rata interests therein. The fund remained intact, notwithstanding the whole thereof was credited pro rata to participants, until a withdrawal was made by a participant of all or part of the amount of his credits. The trustees had no power to distribute the fund, or any part of it, on their own initiative. Hence, until a participant exercised his right of withdrawal from the fund, his credit therein represented only a pro rata equitable interest which was not available to him."

This Berry case is, perhaps, the closest case to the case at bar that counsel has called our attention to. Nevertheless it is distinguishable in that in the case at bar it took affirmative action on the part of Mr. Hicks to keep the 60% portion of the annual contributions from being paid to him. If he did nothing he got it, while in the Berry case it took affirmative action to get any portion of the fund. If he did nothing it went to the fund.

I find therefore that the contribution involved in this case was paid to Mr. Hicks' agent who at his direction turned it in to the profit-sharing fund and that such income was therefore at least constructively received by Mr. Hicks.

Judgment will be entered for the defendant.