Byron A. HICKS and Agnes C. Hicks, Appellants,

v.

UNITED STATES of America, Appellee.

No. 8741.

United States Court of Appeals Fourth Circuit.

Argued Nov. 8, 1962.

Decided Feb. 25, 1963.

Joseph Wysor Smith, Roanoke, Va. (Hazlegrove, Shackelford & Carr, Roanoke, Va., on brief), for appellants.

Thomas A. Skornia, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Meyer Rothwacks, Attys., Dept. of Justice, and Thomas B. Mason, U. S. Atty., on brief), for appellee.

Before SOPER, HAYNSWORTH and BOREMAN, Circuit Judges.

BOREMAN, Circuit Judge.

Taxpayers, Byron A. Hicks and Agnes C. Hicks, his wife, appeal from a judgment of the United States District Court for the Western District of Virginia dismissing with prejudice their suit for refund of federal income taxes for the year 1958 previously paid by Hicks. The disputed tax liability resulted from a deficiency ($264.21) assessed upon $961.14 which had been paid during January 1958, pursuant to Mr. Hicks' written instruction executed on or before December 1, 1957, by Hicks' employer, the First National Bank of Roanoke, to itself as trustee under its profit-sharing plan (referred to as the Plan) for the future benefit of Mr. Hicks. For some years prior to adoption of the Plan in 1957, the Bank had been paying year-end cash bonuses to its employees; upon adoption of the Plan the payment of bonuses was discontinued.

The Plan provided for annual contributions by the Bank of up to 6% of its net profits before taxes. 40% of the contribution was required to be paid into the trust, prorated in proportion to eligible employees' salaries, and held for the future benefit of employees who, like Mr. Hicks, had two or more years' service with the Bank. The remaining 60% of the contribution was divided among all employees with more than one month's service in proportion to their salaries. To those who had worked less than two years, the Plan required payment in cash in January of the year following that for which profits were being shared. But an employee with two years' or more service and eligible to participate in the 40% paid into the trust fund was privileged to elect, on or before December first of the year for which profits were to be computed, whether to receive payment in cash of his proper share of the 60% of the contribution by the Bank or authorize the Bank to pay his share thereof directly into the trust, when and if it became payable to said employee. In case of payment into the trust pursuant to written authorization, the Plan provided for withdrawal by the employee-beneficiary of all or part of his share at his election in any subsequent year under the modest penalty of forfeiture of 5% of the amount so withdrawn. Upon retirement from employment, an employee would be paid his account in the trust fund in installments over a ten-year period unless the Advisory Committee determined another manner of payment.

The District Court in a well-considered opinion, 205 F.Supp. 343 (W.D.Va.1962), which should be read in connection herewith, held that payment by the Bank into the trust of $961.14, pursuant to Mr. Hicks' election and written direction, was the equivalent of (1) the receipt of that amount by Mr. Hicks in cash; and (2) a later deposit by him of the same amount in the trust fund. Thus, it was held to be income constructively received by Mr. Hicks in 1958, the year in which payment was made to the trust for his benefit.

In appealing from the District Court's ruling, Hicks contends that the payment to the trust fund at his direction was not a constructive receipt of income under the applicable law. As one of his arguments taxpayer calls attention to a letter of the Internal Revenue Service dated September 6, 1957, which stated: That the Bank's profit-sharing plan was quali-

fied under section 401(a),[1] Internal Revenue Code of 1954; that the earnings from the trust fund were exempt from income tax under section 501(a)[2]; that the Bank's contributions to the trust under the Plan would be deductible from the Bank's gross income under section 404.[3] Since section 404 permits deductions only for deferred compensation, Hicks draws the inference that the Service by its letter found the whole of the Bank's profit-sharing contribution, both the 40% and 60% portions, was deferred income not currently taxable to the employees. However, the letter commented only on the qualification of the Plan itself, the taxability of trust earnings, and the deductibility *to the Bank* of contributions to the trust which qualified under section 404. No statement was made respecting the tax liability of employees for amounts contributed to or withdrawn from the trust because these matters had not been considered. We think no support can be found in the letter for Hicks' contention that amounts paid into the trust pursuant to the written direction of the Bank's employees would be deferred compensation not currently taxable to those employees.

1. 26 U.S.C. (I.R.C.1954) § 401(a): The relevant portions of this section set forth the employee benefits and participation required for a profit-sharing plan to qualify for preferred tax treatment under sections 501(a), 404 and 402. See footnotes 2, 4 and 5, infra, for the provisions of those sections.

2. 26 U.S.C. (I.R.C.1954) § 501(a):
"§ 501. Exemption from tax on corporations, certain trusts, etc.
"(a) Exemption from taxation.—An organization described in * * * section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502, 503, or 504."

3. 26 U.S.C. (I.R.C.1954) § 404; see footnote 4, infra.

4. 26 U.S.C. (I.R.C.1954) § 404(a):
"§ 404. Deduction for contributions of an employer to an employees' trust or annuity plan and compensation under a deferred-payment plan
"(a) General rule.—If contributions are

## CONSTRUCTIVE RECEIPT OF INCOME WHEN THE BANK PAID THE $961.14 INTO THE TRUST AT HICKS' DIRECTION

■ The parties agree that all payments under the Plan in this case are compensation to the employees, and there is no suggestion that the payments are in the nature of gifts. It is also agreed that the part of the Bank's annual profit-sharing contribution represented by the 40%, which is paid directly to the trust by the terms of the Plan and is not available for any use by the beneficiary until specified conditions are met, is tax deductible from the Bank's gross income under section 404(a)[4] and taxable to the employee only when he receives it from the trust. However, from the standpoint of taxability to the employee-beneficiary, the law recognizes at least two kinds of contributions that can be made to qualified profit-sharing trusts, such as the one under consideration here.

The first type of contribution constitutes truly deferred compensation to the employee (in this case his share of the 40%). Under section 402(a)[5] and

paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income); but, if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year: * * *."

5. 26 U.S.C. (I.R.C.1954) § 402(a):
"§ 402. Taxability of beneficiary of employees' trust
"(a) Taxability of beneficiary of exempt trust.—
"(1) General rule.—Except as provided in paragraph (2), the amount actually distributed or made available to any distributee by any employees' trust described in section 401(a) which is exempt from tax under section 501(a)

Treasury Regulations § 1.402(a)–1,[6] this contribution is not includable in the employee's income until the contribution is distributed or made available to him *from the trust.*

The second type of contribution is considered income to the employee-beneficiary for the taxable year in which it is *actually* or *constructively* received by him. The simplest example of this type of contribution is when the employer pays the compensation directly to its employee, taxable as income to the latter under section 61(a)(1),[7] and the employee is thereafter permitted to contribute directly to the profit-sharing plan maintained by his employer. By other statutory provisions which need not be here discussed, upon later receipt of his account in the profit-sharing trust, the employee-beneficiary gets credit for his previous payment of income tax on the amount so contributed by him. Another example of this type of contribution having the same tax consequences to the employee-beneficiary is when the contribution is deemed constructively received by the employee at the time payment for his benefit is made by his employer into the profit-sharing trust. The question here is whether the payment by the Bank, to itself as trustee, of Hicks' share of the 60% contribution, made at his direction, was taxable income in the year 1958 to Hicks on the theory of constructive receipt, as held by the District Court.

In Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731 (1930), it was held that the taxpayer was liable for income tax upon the whole of his salary and attorney's fees even though he had made a valid prior assignment of one half of those amounts to his wife, and the Court, speaking through Mr. Justice Holmes, said, 281 U.S. at 115, 50 S.Ct. at 241:

"* * * [T]he tax could not be escaped by anticipatory arrangements and contracts however skilfully devised to prevent the salary when paid from vesting even for a second in the man who earned it. * * * [N]o distinction can be taken according to the motives leading to the arrangement by which the fruits are attributed to a different tree from that on which they grew."

In Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916 (1930), the Court, considering a revocable trust created by a husband in favor of his wife, established the principle that the power to revoke the trust and regain control of the income producing property makes the holder of that power liable for taxes on the income from that source. Mr. Justice Holmes, again speaking for the Court, said:

"But taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid. * * * The income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income,

---

shall be taxable to him, in the year in which so distributed or made available * * *."

(The above statute is reproduced in the form effective for the taxable year 1958, prior to 1960 amendment.)

6. Treasury Regulations § 1.402(a)–1 (I.R.C.1954):
"§ 1.402(a)–1 Taxability of beneficiary under a trust which meets the requirements of section 401(a).
"(a) In general. (1)(i) Section 402 relates to the taxation of the beneficiary of an employees' trust. If an employer makes a contribution for the benefit of an employee to a trust described in section 401(a) for the taxable year of the employer which ends within or with a taxable year of the trust for which the trust is exempt under section 501(a), the employee is not required to include such contribution in his income except for the year or years in which such contribution is distributed or made available to him."

7. 26 U.S.C. (I.R.C.1954) § 61(a)(1):
"§ 61. Gross income defined
"(a) General definition.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:
"(1) Compensation for services, including fees, commissions, and similar items."

whether he sees fit to enjoy it or not." 281 U.S. at 378, 50 S.Ct. at 336.

These principles were applied in Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940). In that case the owner of certain coupon bonds detached certain coupons which fell due during the year and gave them to his son. In due course the coupons were paid to the son but it was held that the donor realized income in the year equal to the face amount of the coupons. The Court explained its reasoning, 311 U.S. at 118, 61 S.Ct. at 147:

"The power to dispose of income is the equivalent of ownership of it. The exercise of that power to procure the payment of income to another is the enjoyment, and hence the realization, of the income by him who exercises it."

This conclusion follows the observation that use of the economic power available to an assignor by the assignment of income, either before or after it is earned, in order to satisfy one's wants is equivalent to utilizing cash or other property for the same purpose. Therefore, at the time the income is paid to the assignee the assignor is in constructive receipt of the income, even though title to that income never vests in the assignor because he obtains the economic benefits and "realizes" income at that point in time. " * * * Where the taxpayer does not receive payment of income in money or property realization may occur when the last step is taken by which he obtains the fruition of the economic gain which has already accrued to him." 311 U.S. at 115, 61 S.Ct. at 146.

Several cases cited by the Government illustrate some of the varied situations in which constructive receipt of income has been found. In Williams v. United States, 219 F.2d 523 (5th Cir., 1955), a purchaser of standing timber offered to pay the full purchase amount in cash, but the sellers accepted only one-fifth in cash and required four-fifths to be paid to a bank which had agreed to hold it in escrow for distribution to the sellers over the four succeeding years. In the year of sale the sellers were taxable on the full purchase price which was constructively received when full payment was offered. The self-imposed limitations of the escrow arrangement did not change the situation.

In Hineman v. Brodrick, 99 F.Supp. 582 (D.Kan.1951), where payment for a sale of wheat in 1947 was deferred at seller's request until 1949, although the purchaser was willing to pay on the date of sale and cash payment was the custom of the trade and of these parties, the seller was in constructive receipt of the selling price and was taxable for the income there realized in the year of sale.

In Hines v. United States, 90 F.2d 957 (7th Cir., 1937), cert. denied, 302 U.S. 756, 58 S.Ct. 283, 82 L.Ed. 584, where an undivided interest in real property was deeded by a corporation to a trustee as agent for sale and distribution to holders of certificates of beneficial interests, the certificate holders constructively received their proportionate shares in the property when the deed was delivered to the trustee.

In Duran v. Com'r of Internal Revenue, 123 F.2d 324 (10th Cir., 1941), where taxpayer, an employee of an insurance company entitled to monthly compensation payments of $480.27 for life, assigned them to his sister for her life with a reversion to himself, his taxable income included all payments to the sister although he had completely surrendered control of them.

In Helvering v. Schaupp, 71 F.2d 736 (8th Cir., 1934), a taxpayer who elected to take a life interest in an estate in lieu of statutory dower was taxable on the entire income of the estate, even though her withdrawals were limited by agreement to $200 per month, because the entire income belonged to her and she had the right to withdraw, appropriate and use it.

In DuPont v. Com'r, 63 F.2d 44 (3d Cir., 1933), aff'd, 289 U.S. 685, 53 S.Ct. 766, 77 L.Ed. 1447, where taxpayer set up nine irrevocable three-year trusts with

the income of each to pay insurance premiums on his life and renewal of the trusts was optional at end of the three-year periods, the income on the trusts was taxable to taxpayer as received by the trusts even though he had relinquished control for the three-year periods. Taxpayer, in maintaining the respective insurance policies, was enjoying the income; therefore, the tax was imposed on his realization of the trust income in the taxable year.

In J. H. McEwen, 6 T.C. 1018 (1946), at taxpayer's suggestion, incentive compensation payments due him under an employment contract were paid to a trustee and invested by the trustee in single payment annuity contracts to be held by the trustee and later distributed to taxpayer or his widow on a specified basis. This was taxable income to the taxpayer in the year his employer paid the bonus to the trustee on the theory of constructive receipt.

 The law of these cases appears to have been followed in Treasury Regulations Section 1.451–2(a) which reads:

"§ 1.451–2 Constructive Receipt of Income.

"(a) General rule. Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account or set apart for him so that he may draw upon it at any time. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. Thus, if a corporation credits its employees with bonus stock, but the stock is not available to such employees until some future date, the mere crediting on the books of the corporation does not constitute receipt."

From the cases and Regulations it is clear that income is taxable as constructively received when it is first available for the free and unrestricted use of the designated recipient, and this power to dispose of income as he wishes results in taxable income to the holder of the power. When exercised to direct the payment of income to a third person, the existence of such power is clearly demonstrated.

Taxpayer Hicks, however, contends that the requirement that he direct the Bank to pay his proportionate share of the 60% to the trustee by December first, more than thirty-one days before the amount or existence of his share became known, was a "substantial limitation or restriction" under Regulation § 1.451–2 (a), supra, which would defeat the theory of constructive receipt of taxable income by him in 1958. The District Court correctly concluded that nothing prevented Hicks from receiving payment of his portion of the full 60% in cash on the date of distribution by the Bank. Hicks' written instruction diverting the payment from himself to the trustee was a voluntary act in exercise of his power to dispose of the income represented by that payment. Upon deposit of the payment in the trust, Hicks fully realized the economic gain and obtained benefits similar to those available to him had he elected to take the cash and purchase an annuity. The requirement that election to deposit the payment in the trust be made more than thirty days in advance established the procedure for obtaining increased participation in the trust but it did not, by imposing either penalty or delay, prevent Hicks from taking the full amount in cash. Therefore, the payment here involved became available without condition or limitation in 1958, Hicks constructively received it at that time and it was properly subject to the payment of income tax for that year.

Affirmed.