**J. Robert RHODES and Grace P. Rhodes, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 3038.**

United States District Court
W. D. South Carolina,
Greenville Division.

Heard June 7, 1965.

Decided July 30, 1965.

C. Thomas Wyche, of Wyche, Burgess, Freeman & Parham, Greenville, S. C., for plaintiff.

Norman W. Goldin, Washington, D. C., John C. Williams, U. S. Atty., and Geddes H. Martin, Asst. U. S. Atty., Greenville, S. C., for defendant.

HEMPHILL, District Judge.

Civil tax refund suit instituted by plaintiff[1] to recover additionally assessed, and paid, taxes for 1958. The issue presented is whether plaintiff, a cash method taxpayer, is entitled to report the gain realized on the sale in 1958 of her farm on the "installment sale" basis as provided in Section 453(b) of the Internal Revenue Code of 1954, where the purchasers, at request of and for benefit of plaintiff, placed the purchase price in escrow with a bank which was to disburse the sum to plaintiff in five annual payments. The government contends that the sale was not a statutory installment sale, that plaintiff-taxpayer for tax purposes, constructively received or had a beneficial interest in the full purchase price placed with the bank in 1958 when the sale was otherwise completed and title unconditionally passed to the purchasers. Testimony was heard by the Court, and the underlying facts, most of which have been stipulated to by the parties, are not in essential dispute.

In the fall of 1958, a group of businessmen formed an investment group known as Dwight Holder & Associates (hereinafter referred to as the "purchasing group"), for the purpose of obtaining real estate in the Greenville, South Carolina, area to be used as a memorial cemetery. Under their plan the land to be acquired was to be developed and beautified for public sale of grave spaces. Mr. Jeff Richardson, a local real estate agent and a member of the purchasing group, located suitable property owned by plaintiff Grace P. Rhodes, a resident of Greenville County, South Carolina. Under authorization of the group, Mr. Richardson purchased an option from plaintiff for $500 under which plaintiff agreed to sell her property, consisting of a farm containing some 118 acres, for a sales price of $1,000 per acre. Under the option, payment was to be made on a cash basis within two weeks after the exercise thereof, and upon such payment, plaintiff agreed to convey to Mr. Richardson or his assigns a good and marketable fee simple title, free and clear of all encumbrances. The $500 option payment was to be credited against the purchase price, but if the option was not exercised, plaintiff was to retain the $500. The purchasing group decided to purchase the optioned property. C. T. Wyche, Esq., attorney for the purchasing group and a member thereof, by letter of November 3, 1958, relative to the purchase of plaintiff's property, requested each member of the purchasing group to pay their respective share in the venture to the Peoples National Bank, which was to act as agent, on or before November 7, 1958. The group deposited $157,000 with the bank for the purpose of acquiring the plaintiff's property and the development thereof.

The purchasers at the time of depositing their money with the bank and all times thereafter were willing to pay the purchase price of $118,030 on a cash sale transaction out of the $157,000 which they had deposited. They did not desire to execute a real estate mortgage on the property because such arrangement would require at the time of

1. Plaintiff is used in the singular and refers to plaintiff Grace P. Rhodes, since the property, the sale of which is the subject matter of the suit, was owned by her and her husband, J. Robert Rhodes, was made a party plaintiff solely by reason of their filing a joint return for 1958.

later sale of each cemetery lot a specific mortgage release as to each lot sold. Hence, because of the impracticability of any other arrangement, the purchasing group wished to receive a clear and unencumbered title for the property upon the purchase thereof. Attorney Wyche, who at this time was also counseling the plaintiff, recommended to her that in order for her to secure a preferred tax treatment on the sale of her property that an installment contract be utilized and entered into. Consequently, an agreement was drawn up styled "Contract for Real Estate," and, in order to accommodate the plaintiff and for her benefit, the purchasing group executed this agreement and purchased the property thereunder on December 12, 1958.

The "Contract for Real Estate" called for the escrow agent, the Peoples National Bank, which had on deposit at the time the sum of $157,000 as above indicated, to pay over to the plaintiff the purchase price of $118,030 (which was arrived at on the basis of $1,000 per acre), as follows:

On or before December 31, 1958—$23,630

Between January 1, 1959 and January 15, 1959—$23,600

On or before December 31, 1960—$23,600

On or before December 31, 1961—$23,600

On or before December 31, 1962—$23,600

Under the agreement, the $70,800 representing the last three payments was to be invested in federally insured savings and loan shares to be held in trust for the plaintiff. In addition, the escrowee-bank was to pay the plaintiff 3% interest on the savings and loan certificates with interest in excess of 3%, less bank charges and commissions, to be retained for the benefit of the purchasing group. The agreement provided that upon the payment of the first "installment," the plaintiff was to convey by a general warranty deed to the purchasing group a good and marketable fee simple title, free and clear of liens and encumbrances, and, further provided, that upon execution of said contract and upon delivery of the aforesaid deed to the property by the seller, the purchasing group was to be relieved of any further responsibility or liability to seller and the sole responsibility and liability of the escrowee-agent bank was to pay the plaintiff the "installments" at the times provided out of the cash in its hands and the savings and loan shares which it was to purchase and liquidate as necessary to make the indicated payments.

The first payment of $23,630 was made by the bank to plaintiff on December 12, 1958, the same date the "Contract for Real Estate" was executed and the same date that plaintiff executed and delivered the warranty deed to the purchasing group. On January 2, 1959, the bank delivered to the plaintiff its check in the amount of $23,100, and also delivered a check in the amount of $500 for Mr. Richardson, the latter amount representing the credit against the purchase price of the original $500 option payment retained by plaintiff. The bank as trustee for plaintiff invested the balance of the purchase price, $70,809, in savings and loan certificates in various federally owned savings and loan associations, and paid the plaintiff the sum of $5,429.33, representing 3% of the interest earned upon said funds so invested, from 1959 to 1962, inclusive. The bank received $6,613.66 as the total amount of interest earned on the savings and loan certificates, out of which the bank paid plaintiff $5,429.33, and out of the $1,-184.33 representing the difference between 3% and the amount of interest actually earned by the savings and loan certificates, the bank paid the purchasing group a total of $944.35, retaining $236.98 out of the excess interest as its charge for its services. The bank paid over to plaintiff the $70,800 representing that portion of the purchase price invested in federally owned savings and loan associations by a payment of $23,-600 each in the years 1960, 1961 and 1962, which monies the bank secured by

a pro-tanto liquidation of the savings and loan certificates.

The purchasers required a clear and unrestricted title to the property and were willing and able to purchase it outright on a cash basis. The arrangement for the purchase price to be held by the bank and disbursed annually to plaintiff was entered into and made at plaintiff's request and for her benefit, hopefully for her to save taxes, and was not the result of any business purpose on the part of buyers. At the date of the sale, plaintiff transferred a clear and irrevocable title to buyers and they unconditionally and irrevocably paid the entire purchase price into the bank for payment to plaintiff. At such time the transaction was complete and nothing remained to be done by either plaintiff or buyers; all that remained to be accomplished were the stated and required annual disbursements by the bank to plaintiff.

Plaintiff and her husband, on their cash basis joint income tax return for 1958, elected to report the gain on the sale of her property as an "installment sale" under the provisions of Section 453 of the Internal Revenue Code of 1954, contending that the single cash payment of $23,600 which plaintiff actually received in 1958 was the only payment she received, actually or constructively, and realized in 1958 with respect to the sale of her property. Upon examination of plaintiff's return, the Commissioner of Internal Revenue determined that the plaintiff's sale did not qualify for "installment sale" treatment under the Code and that in 1958 plaintiff had constructively received or had a beneficial interest in the full purchase price placed with the bank. Accordingly, the Commissioner included the entire gain realized by plaintiff from the sale in her taxable income for 1958 and on this basis the deficiency tax sought to be recovered herein was

assessed and collected. Thereafter, plaintiff timely filed claim for refund of such additional taxes and, at the administrative level and, after disallowance thereof, instituted this suit for the recovery of such taxes, under 28 U.S.C. § 1346(a) (1).

The question before the Court, in light of the foregoing facts, is whether plaintiff's sale qualifies for "installment sale" treatment under Section 453(b) of the 1954 Code. Plaintiff argues that the sale arrangement qualifies as a statutory installment sale and that she is entitled to report her gain on the installment basis because she neither received, actually or constructively, more than 30% of the purchase price in the year of sale, 1958. On the other hand, defendant contends that the transaction was not a true installment sale within the statutory requirements, and that plaintiff realized and actually received, in the form of an economic benefit, or constructively received the full purchase price in the year of sale, and, therefore, the relief provisions of Section 453 are inapplicable. The area of the dispute does not include any questions as to the amount or character of the gain realized on the sale; the Commissioner has accepted that the gain qualifies for capital gains treatment and the parties are here in agreement as to the amount of the gain realized. Rather, here, the nub of the dispute revolves around the question as to when the income was received and the application of the Code provisions relevant to installment sales.

Generally, the gain realized on the sale of property by a cash basis taxpayer is subject to tax when such income is received,[2] either actually, in cash or its beneficial equivalent,[3] or constructively.[4]

2. Sections 446 and 451, Internal Revenue Code of 1954.

3. Commissioner v. Smith, 324 U.S. 177, 181, 65 S.Ct. 591, 89 L.Ed. 830; Kuehner v. Commissioner, 214 F.2d 437, 449 (1st Cir. 1954), affirming 20 T.C. 875.

4. Williams v. United States, 219 F.2d 523, 527 (5th Cir. 1955); Hicks v. United States, 314 F.2d 180, 185 (4th Cir. 1953).

Section 453 of the Internal Revenue Code of 1954 is applicable to certain installment sales, and provides[5] that in the sale of realty in which there are no payments in the year of sale or the payments (exclusive of evidence of indebtedness of the purchaser) in the year do not exceed 30% of the selling price, the vendor may return as income from a qualified installment sale in any taxable year that portion of the installment payments actually received in that year which the gross profit realized or to be realized when the property is paid for bears to the total price. The purpose of the installment method of reporting is to permit the spreading of the tax over the period of the payments. S. & L. Bldg. Corp. v. Commissioner, 60 F.2d 719 (2nd Cir. 1932). The provisions were enacted to "enable a merchant to actually realize the profit arising out of each installment before the tax was paid," so that the tax could be paid "from the proceeds collected rather than be advanced by the taxpayer." Thomas F. Prendergast, 22 B.T.A. 1259, 1262; see Consolidated Dry Goods v. United States, 180 F.Supp. 878 (D.Mass.1960).

It is clear that a seller is not entitled to report income on the installment basis as provided in Section 453, where the payments (exclusive of evidences of indebtedness of the purchaser) actually and/or constructively received during the year of sale exceed 30% of the selling price of the property. Section 453(b) (2) (A). Williams v. United States, 219 F.2d 523 (5th Cir. 1955); Williams v. United States, 185 F.Supp. 615 (D.Mont.1960).

The installment sale provisions are relief provisions and exceptions to the general rule as to the year for reporting income, and as such, they must be strictly construed, Blum's Inc. v. Commissioner, 17 B.T.A. 386; Cappel House Furnishing Co. v. United States, 244 F.2d 525, 529 (6th Cir. 1957), and a sale on the "installment" basis that lacks reality will be no more efficacious in avoiding taxes than any other type of sale. Commissioner v. Griffiths, 103 F.2d 110 (7th Cir. 1939), aff'd. (Griffiths v. Helvering), 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319; Williams v. United States, supra, (5th Cir.); Hindes v. United States, 214 F. Supp. 583 (W.D.Tex.1963), affirmed on this point 326 F.2d 150 (5th Cir. 1964).

Here, where the terms of the contract of sale were fully carried out, and at the time of the sale in 1958 title passed absolutely to the buyers and the plaintiff could have unconditionally obtained directly in cash, but for her own imposed volition, the entire purchase price, which the buyers unconditionally and irrevocably placed in escrow for the tax benefit of plaintiff, the plaintiff was in constructive receipt of the full purchase price in the year of sale and, accordingly, the gain thereon must be fully reported in that year. Williams v. United States, 219 F.2d 523, supra; Williams v. United States, 185 F.Supp. 615, supra. In substance and effect, on the date of sale, the transaction was complete and nothing more remained to be done by either plaintiff or the buyers; all that remained to be accomplished was disbursement by the bank of the purchase price. Here, as the facts show, the buyers required a clear title to the property and were willing and able to pay the full price in cash to plaintiff; the payment arrangement provided for, in the sales agreement, was at plaintiff's request and for her tax benefit. It is important here that the buyers paid the entire purchase price in cash at the time of sale—and that this payment was unconditional and irrevocable, and there was no contingency as to plaintiff's receipt thereof. Under the terms of the agreement, the buyers could not revoke, alter, amend or terminate the "escrow" arrangement, and thereunder the bank was to disburse the purchase price to plaintiff in five annual installments within specified dates, there being no condi-

---

5. Section 453(b) (2) (A). See Treasury Regulations on Income Taxes (1954 Code), Section 1.453–5 (26 C.P.R., Section 1.453–5).

tions whatever. So far as the buyers were concerned, then, their position as purchasers immediately after the sale was exactly the same as if they had delivered the entire purchase price in cash directly to plaintiff. They had acquired full and unconditional legal title to the sales property, had been specifically relieved of any further liability or responsibility, and they had made unconditional payment of the entire purchase price in cash in accordance with plaintiff's request and for her benefit. In sum, the sale was complete, final and irrevocable in 1958. Thereafter, the buyers could not recover any portion of the money held by the bank; nor could plaintiff in any way invoke the sales agreement, and the "escrow" arrangement thereunder, to prevent the buyers from exercising their rights as complete owners of the farm property. The bank had no duty or obligation in respect to the purchase price other than to pay it over to plaintiff. Further, under the agreement, the interest earned on the purchase price was paid to plaintiff except for an amount of approximately one-half of one percent which is without such economic significance as to indicate an independent business purpose on the part of the buyers. Moreover, the parties have stipulated that the escrow arrangement was for plaintiff's tax benefit. Plaintiff's volition was unfettered with respect to receipt or disposition of the purchase price of the property at the time of sale, and she caused its irrevocable pay-

ment to a third party for unconditional disbursement to herself at later times. Under the circumstances herein, there was no true installment sale and plaintiff was in constructive receipt of the full purchase price at the time of sale.

Authorities cited by plaintiff which held, on their facts, that a seller was not in constructive receipt of the proceeds of sale illustrate by converse reasoning the principles above set forth. In all of them disbursement of the proceeds to the seller was deferred subject to a genuine condition, that is, to future contingencies which might even prevent the seller from ever receiving a part or all of the money.[6] Thus, the purchase price was not unconditionally available to the seller at the time of sale; it was not irrevocably paid out by the purchaser for the benefit of the seller at the time of the sale; and, hence, the seller was not in constructive receipt of money. The defect in plaintiff's argument is that she insists upon viewing the transaction only as of the time the agreement providing for the escrow arrangement was entered into. That is not sufficient, however, because it ignores the fact that the parties had agreed upon a cash sale and the fact that it was only at plaintiff's request that an escrow arrangement was inserted in the formal contract. As Judge Boreman stated in Hicks v. United States, 314 F.2d 180 (4th Cir. 1963), it was this action by plaintiff which "was a voluntary act in exercise of [her]

---

**6.** Plaintiff cites Murray v. Commissioner, 28 B.T.A. 624 (wherein a portion of the purchase price was escrowed in protection of the purchaser against the possibility that the seller would enter a competing business); Depew v. Commissioner, 27 B.T.A. 515 (wherein both the stock and the proceeds were escrowed in 1925 under an agreement containing other provisions, including a provision that the stock was to be returned to the respective stockholder if the complete agreement had not been consummated on or before February 1, 1926); and Milton E. Farr, 11 T.C. 552 (wherein the $300,000 placed in escrow in 1941 was subject to an unliquidated Government claim, and bank was to pay out only the balance,

as then undetermined, to purchaser in subsequent years). Also, plaintiff cites Drysdale v. Commissioner, 277 F.2d 413 (6th Cir. 1960) (involving payments to a trustee in respect of employment contract wherein such funds were to be paid to the employee in future years upon certain conditions, and where the contract provided forfeiture of such future payments in the event the employee entered competing business or did not provide services requested of him); and Fleming v. Commissioner, 241 F.2d 78, 83 (5th Cir. 1957) (involving insurance proceed agreement wherein both parties contracted for and obtained substantial benefits).

power to dispose of the income * * " and upon creation of the escrow plaintiff "fully realized the economic gain and obtained benefits similar to these available to [her] had [she] elected to take the cash * * *." Noted also was that income is constructively received "when it is *first* available for the free and unrestricted use of the designated recipient." (Emphasis added.) 314 F.2d at 185. The same result was reached by the Court of Appeals for the Fifth Circuit in Williams v. United States, supra, where it was held that the voluntary placing in escrow of money otherwise payable to the seller of property was a completed sale in economic reality, that the seller was taxable upon the entire proceeds in the year of sale, and that the use of the escrow arrangement could not be allowed to defer payment of taxes otherwise due upon such completed sale.

■ Even if plaintiff were not in constructive receipt of the full purchase price at the time of sale, she would still have taxable gain in that amount in the broader form of economic or financial benefit. Realization of taxable income is not confined to receipt or constructive receipt of cash since the concept of income is "broad enough to include in taxable income any economic or financial benefit conferred * * * whatever the form or mode by which it is effected." Commissioner v. Smith, 324 U.S. 177, 181, 65 S.Ct. 591, 593, 89 L.Ed. 830, reh'g den., 324 U.S. 695, 65 S.Ct. 891, 89 L.Ed. 1295. Here, where on the date of sale the plaintiff became unconditionally entitled to the payment on specified future dates of a fixed sum of money, for value received, plaintiff had realized taxable income in the form of economic or financial benefit in the full amount of the sum she was ultimately to receive. Kuehner v. Commissioner, supra.

In accordance with the foregoing, it is held that the sale did not constitute a true statutory *installment* sale; and, plaintiff is not entitled to report her gain on the installment basis but must report it in 1958 because in such year the full purchase price was actually received, in the form of a financial benefit, or, at the least, constructively received by her.

Accordingly, judgment should be entered in favor of defendant, dismissing plaintiff's complaint. The Clerk will make the appropriate entry.

And it is so ordered.