W. T. GRANT COMPANY, Appellee,

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellant,

No. 770, Docket 72–2213.

United States Court of Appeals,
Second Circuit.

Argued May 10, 1973.

Decided Aug. 22, 1973.

————◆————

Jane M. Edmisten, Atty., Tax Div., Dept. of Justice (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks and Paul M. Ginsburg, Attys., Tax Div., Dept. of Justice, Washington, D. C., of counsel), for appellant.

A. Chauncey Newlin, New York City (White & Case, David Sachs, New York City, of counsel), for appellee.

Before SMITH, MULLIGAN and TIMBERS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

The Commissioner of Internal Revenue appeals from a decision of the Tax Court, Charles R. Simpson, Judge, reviewed by the court, reported at 58 T.C. 290 (1972), holding that taxpayer's sales under its Coupon Book Installment Plan qualify for installment method treatment under § 453 of the Internal Revenue Code of 1954. We find that the sales do not qualify under the Code [1] and the regulations [2] and reverse.

The facts are found in the Tax Court opinion and may be summarized as follows.

1. Internal Revenue Code of 1954 (26 U.S.C.) : *"Sec. 453. Installment method.*

(a) [as amended by Sec. 3(a), Act of August 31, 1964, P.L. 88–539, 78 Stat. 746] *Dealers in Personal Property.*—

(1) In general.—Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price."

2. Treasury Regulations on Income Tax (1954 Code) (26 C.F.R.) :

*"§ 1.453–1 Installment method of reporting income.*

(a) In general. (1) Section 453 permits dealers in personal property, that is, persons who regularly sell or otherwise dispose of personal property on the installment plan, to elect to return the income from the sale or other disposition thereof on the installment method. To the extent provided in paragraph (d) of § 1.453–2, sales under a revolving credit type plan will be treated as sales on the installment plan and the income from the sales so treated may be returned on the installment method. A dealer who makes sales of personal property under both a revolving credit plan and a traditional installment plan may elect to report only sales under the traditional installment plan on the installment method; or he may elect to report only sales under the revolving credit plan on the installment method; or he may elect to report both sales under the revolving credit plan and the traditional installment plan on the installment method. A traditional installment plan usually has the following characteristics:

(i) The execution of a separate installment contract for each sale of personal property, and

(ii) The retention by the dealer of some type of security interest in such property. (2) The installment method may also be applied with certain limitations (see paragraph (c) of this section) to the sale or other disposition of real property and the casual sale or other casual disposition of certain personal property.

§ 1.453–2. *Special rules applicable to dealers in personal property.*

\* \* \* \* \*

(b) *Definition of sale on the installment plan.* The term "sale on the installment plan" means—

(1) A sale of personal property by the taxpayer under any plan for the sale or other disposition of personal property, which plan, by its terms and conditions, contemplates that each sale under the plan will be paid for in two or more payments, or

(2) A sale of personal property by the taxpayer under any plan for the sale or other disposition of personal property—
(i) Which plan, by its terms and conditions, contemplates that such sale will be paid for in two or more payments, and

(ii) Which sale is in fact paid for in. two or more payments. Normally, a sale under a traditional installment plan (as described in paragraph (a)(1) of § 1.453–1) meets the requirements of subparagraph (1) of this paragraph. See paragraph (d) of this section for the application of the requirements of subparagraph (2) of this paragraph to sales under revolving credit plans."

Grant's provides its customers with three basic credit plans: (a) Special Purchase Installment Plan, a traditional single item installment plan; (b) 30-day Option Plan, a typical revolving credit plan; and (c) the Coupon Book Installment Plan, the plan at issue. Under the Special Purchase Installment Plan the customer enters into a retail credit agreement for individual purchases, and agrees to pay equal monthly installments over a fixed period of time. A service charge is included as part of the selling price. For the term of the contract, Grant's retains a security interest in the item purchased.

The 30-Day Option Plan allows a customer, through use of a credit card, to charge to his account sales during the billing month which he may pay fully within thirty days without a service charge, or may elect to pay at least 10 per cent of the balance in the account each month. With this election the customer incurs a service charge calculated each month on the outstanding balance in the account. No security interest is retained in the merchandise.

■■■■ Under the Coupon Book Installment Plan customers deemed good credit risks are given the opportunity to purchase coupon books whose coupons may be redeemed for merchandise in any Grant's store. The books vary in value for $10 to $100 and contain coupons of various denominations.[3] The books may be paid for in full or over a period of time pursuant to a retail credit agreement in which the customer agrees to pay a certain time price differential in addition to prescribed monthly payments. In the tax years in question the

period was a minimum of four months, a maximum of eighteen months. During this period the coupons may be redeemed at any time and in any amount. Return of the coupons or merchandise, or payment in full of the outstanding balance of the obligation results in a reduction in the amount due, as well as a proportionate reduction in the time price differential.[4]

Grant's accounts for the special purchase plan sales and coupon books redemption in an identical manner. Sales under the coupon plan are deemed to occur when the coupons are redeemed, not when the coupon books are initially sold. The retail credit agreement, however, does indicate that the book is the item sold on which credit is extended. Grant's does not keep records of coupon redemption for each customer account. Thus there is no means of correlating the sales of merchandise items to the installment payments.

The Tax Court found that the coupon book was an installment sale, a "sales arrangement whereby the selling price is collected in periodical installments" and "the selling of consumer goods on credit under conditional sales contracts that provided for regular periodic payments after an initial down payment." The court resorted to the "common understanding of installment sale" as was done in Consolidated Dry Goods Co. v. United States, 180 F.Supp. 878 (D. Mass.1960). In Consolidated Dry Goods, however, this was resorted to solely for lack of either a statutory or regulatory definition of installment sale. Regulatory definitions were quickly drawn up in response to Consolidated Dry Goods.

---

3. For instance in a $50.00 book, coupons range from $2.00 to 50¢ in value.

4. Grant's relies in part on a letter from the Treasury indicating that it was not an open-ended credit plan for the purposes of the Truth in Lending Act.

 This does not settle the issue for § 453 purposes. The purpose of the Truth in Lending Act is to assure that the consumer debtor is aware fully of the costs of his credit. Where the cost is predetermined

and spelled out in advance the special disclosures required for open-ended accounts are not needed. Whether payments under a credit plan are made on a revolving credit plan under § 453 goes to an entirely different issue—whether in fact payments on a debt account covering the purchase of a number of items covers the purchase price of particular purchases, or represents only partial payment of the price of each item, justifying tax deferral.

Congress in 1964 first adopted, but soon repealed a statutory definition, preferring to rely on the regulation. *See* 1964 U.S.Code Cong. & Admin.News p. 3320, S.Rep. No. 1242, 88th Cong., 2d Sess. Any determination, therefore, of Grant's qualifying for § 453 treatment must be made in the context of the regulations. § 1.453–2(b)(1), (2).

Traditional installment sales, as characterized in § 453(1)(a) are covered by Treas.Reg. § 1.453–2(b)(1). Normally under these plans a separate contract is executed for each sale of personal property, and a security interest is retained in the property. Typical of such sales is the conditional sales contract. Sales falling within the second definition, § 1.-453–2(b)(2) include—contingent on certain proof [5]—revolving credit plans, cycle budget accounts, flexible budget accounts, and other similar plans or arrangements for the sale of personal property under which the customer agrees to pay each billing month a part of the outstanding balance of his account.

■■■ Installment reporting was enacted as a relief provision to allow a merchant first to actually realize profits arising from deferred payment transactions before requiring that a tax be paid on the gain. Prendergast v. Commissioner, 22 BTA 1259, 1262 (1931). To qualify for the benefits of installment reporting the taxpayer has the obligation of showing that he is one of the intended beneficiaries of § 453, that in fact gain realized on his sales will be received in installments.

■■ The primary distinction between § 1.453–2(b)(1) and § 1.453–2(b)(2) sales on installment plans focuses on this obligation of the taxpayer. Where there is a separate contract for each sale in which the parties contract for installment payments for the purchase of a particular item, the Commissioner will accept the provision for periodic payments as establishing such payments. Where, however, the parties' contract

covers a number of sales no specific intent is demonstrated as to any particular purchase; it is not unlikely then that while installment payments may be made on a great number of the sales, some will be paid in single payments. As intent cannot be demonstrated specifically proof of actual multiple payments is required. *See* S.Rep. No. 1242, *supra*, at 3320–3322; Emory, The Installment Method of Reporting Income: Its Election, Use and Effect, 53 Cornell L.Rev. 181, 262–63 (1968).

The Congress, in the Revenue Act of 1964, as noted above, initially adopted the position suggested by the Tax Court here, and provided a statutory definition of installment sale so as to extend § 453 "to income received under any plan which provides for the payment by the purchaser for personal property sold to him in a series of periodic installments of an agreed part or installment of the debt due the seller." Exception was made for sales essentially made as an ordinary charge account. *See* 1964 U.S. Code Cong. & Admin.News at pp. 1771–1772. Within the same year, however, the statutory definition was repealed, the Congress concluding "that it would have been better to have left the Treasury Department with the opportunity to determine by regulation the extent to which sales under revolving credit type plans are to be treated as sales under installment plans." S.Rep. No. 1242, *supra*, U.S.Code Cong. & Admin.News at p. 3322.

In the context of the regulation's definitions the similarities between the Special Purchase Installment Plan and the Coupon Book Installment Plan relied on by the Tax Court and appellee are of little significance. While the company uses the same accounting procedures for both plans, the basic distinction still exists—contract and accounts under the special purchase plan apply to a single sale item and thus reflect an intent as to the specific purchase and clearly correlate payments to individual sales while

5. Treas.Reg. § 1.453–2(d)(3).

there is no correlation of payment and purchase under the coupon book plan.[6]

Underlying the court's decision in the case at bar was the assumption that when a customer purchases a coupon book he is doing so in order to acquire an aggregate purchase of merchandise and to pay for it in installments. It discounted the possibility of small individual purchases that would be covered by the monthly payments, or delayed redemptions, finding it unreasonable to believe that customers would incur an added finance charge without taking advantage of the extension of credit. Yet while it is true that overall the records of the company indicate that a great number of the coupons are redeemed quickly and frequently in a period of one month, there is evidence that a significant number are not immediately redeemed.[7]

The evidence suggests the possibility that redemptions could be covered by single or prior payments. The proof procedures provided in § 1.453–2(d) were designed to cover this situation—sales where a large number are expected to be paid and are paid in installments,[8] but may also be and are in some cases paid in full.[9] The intent of Congress is clear; § 453 is to be extended to revolving credit plans, such as Grant's subject however to the regulation and proof requirements deemed warranted by the Commissioner. At least some and possibly a substantial number of the purchases in the last month of the tax year are covered by a single month's payment and were not intended to be the basis for tax deferral.

Grant's chose the merchandising coupons method to avoid the expense and inefficiency of a separate credit contract for each small purchase; in doing so it lost the protection of the traditional installment sales presumption of periodic payment.[10]

"A dealer who desires to compute income by the installment method shall maintain accounting records in such a manner as to enable an accurate computation to be made by such a method in accordance with the provisions of this section. . . . " Treas.Reg. § 1.453–2(c)(1). Grant's might either have used separate contracts or kept customer accounts of redemptions. It did neither and therefore cannot prove that it is eligible for § 453 relief. Tax deferral should not have been granted.

Reversed and remanded.

---

6. Traditionally a conditional sales contract retained a security interest in the property because the usual sale was of hard goods which would have some resale value on repossession. Generally items bought on a revolving credit plan would not be subject to this kind of security interest because such soft goods would have relatively little resale value after repossession. Raum, The Tax Aspects of Revolving Credit: Application of the Installment Method of Reporting Income, 19 Institute of Federal Taxation 1225, 1226 (1961). In some states retention of such an interest is prohibited for revolving credit including merchandising coupons. *See, e. g.*, N.Y. Personal Property Law §§ 401, 402A (McKinney's Consol. Laws, c. 41, 1962), as amended (McKinney Supp.1972).

7. In both 1964 and 1965, issued coupons exceeded redeemed coupons in six months of each year, ranging from $140,000 to $1,960,000 in 1964 and $3,000 to $3,000,000 in 1965.

8. The regulations were deemed at the time of the 1964 Revenue Act to cover at least 80% of all revolving credit plans.

9. The possibility of single payments to avoid incurring a credit charge under revolving credit plans apparently is one basis for the Commissioner's insistence on some proof provision under § 453.

10. The government contends that under Grant's accounting methods, if installment tax treatment is allowed, a substantial amount received over the years for coupons mislaid, lost or destroyed will never be reached for taxation. We express no opinion on the substantiality of this claim on the record before us.