488 F.2d 111
 Fed. Sec. L. Rep. P 94,310
Ferrin C. HARMAN and Henry Clay, Plaintiffs-Appellants,
v.
DIVERSIFIED MEDICAL INVESTMENTS CORPORATION, a Colorado
corporation, et al., Defendants-Appellees.
DIVERSIFIED MEDICAL INVESTMENTS CORPORATION, a Colorado
corporation, Third Party Plaintiff,
v.
David L. DOOLEY, Third Party Defendant.
 No. 73-1299.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted Sept. 14, 1973.
Decided Nov. 27, 1973.
 
 John B. Ogden, Oklahoma City, Okl., for plaintiffs-appellants.
 Robert S. Baker, Oklahoma City, Okl. (Dan A. Rogers, Tulsa, Okl., on brief for John E. Schroyer; Robert J. Emery, Oklahoma City, Okl., on brief for Chromalloy, Friedman, Zlotnick and Mullins), for defendants-appellees.
 Before PHILLIPS, HILL and DOYLE, Circuit Judges.
 HILL, Circuit Judge.
 
 
 1
 This appeal results from the dismissal of appellants' complaint and the granting of summary judgment for the defendants on their cross-claim in the United States District Court for the Western District of Oklahoma. After reviewing the submissions included in the record of this diversity case, we conclude that the many factual issues present in this case render the entry of summary judgment inappropriate here.
 
 
 2
 The record reveals some uncontroverted facts. Appellants Harman and Clay, as the controlling stockholders and managing officers of Perpetual Royalty Corporation, entered into an agreement with Diversified Medical Investments Corporation (DMIC) to transfer all of the outstanding stocks and assets of that company to DMIC in exchange for 240,000 shares of DMIC stock. After the completion of that exchange, DMIC halted trading in these shares by instructing its transfer agent to withhold action on any requests for changes of ownership involving the 240,000 shares in question. As a result, Harman and Clay filed the instant complaint alleging that DMIC and others had represented that the stock they were to receive under this agreement would be "free-trading" fully marketable stock, and that it would enjoy a specific range of market values. Defendants cross-claimed that as a result of various misrepresentations by the appellants, there had been no meeting of the minds in regard to this contract and requested rescission.
 
 
 3
 As we have stated as recently as in Ando v. Great Western Sugar Co., 475 F.2d 531 (10th Cir. 1973), no margin exists for the disposition of material factual issues by the use of summary judgment; that procedure cannot serve as a substitute for the trial of cases and does not require the parties to dispose of litigation by the use of affidavits. In reviewing such action by the district court, the pleadings and other documentary evidence are to be construed liberally and in favor of the party opposing such motions. United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed. 2d 176 (1962). If any issue as to a material fact dispositive of right or duty remains, the case is not ripe for disposition by summary judgment and the parties are entitled to a trial. Fischer Constr. Co. v. Fireman's Fund Ins. Co., 420 F.2d 271 (10th Cir. 1969).
 
 
 4
 Though findings of fact would appear to be unnecessary in a case that contains no material questions of fact, the district court specifically found that DMIC made no representations of fact concerning the stock to appellants and that no meeting of the minds ever existed in regard to this contract. Both the dismissal of the complaint and the granting of summary judgment must be reversed if these conclusions are controverted by the evidence.
 
 
 5
 First, the agreement in question was negotiated in large measure by one David Dooley, an officer and director of DMIC. However, the evidence indicates Dooley's true role has yet to be ascertained. He had at least furnished estimates of the value of Perpetual's holdings to other potential buyers previous to these negotiations, and there is also evidence that he was paid a 40,000 share commission by Harman and Clay to complete the sale to DMIC. Dooley made representations to both the appellants and DMIC during the negotiations, and a factual issue arises as to whose agent he was during such time.
 
 
 6
 Additionally Clay, in his deposition, testified that Farr, the president of DMIC, and Peterson, an attorney listed as DMIC's securities specialist in a DMIC brochure, both assured him that the stock he was to receive would be fully marketable. Harman, Clay and Dooley indicated that it was understood by both parties that appellants would have to sell portions of this stock to pay the debts of Perpetual so as to transfer the company free of obligations as required by the agreement, although that requirement did not appear in the written agreement in June, 1970. These facts are totally inconsistent with a finding that the agreement included no statements concerning the transferability of this stock.
 
 
 7
 Further it raises important doubts as to the exact terms of this alleged contract. Originally the parties signed a reorganization agreement in June, 1970. This agreement included a statement that DMIC would assume all the obligations of Perpetual. It also included covenants by Harman and Clay that Perpetual owned 25,000 acres of royalties, had a net worth of $250,000, and that they had not agreed to pay any finder's fee in regard to this sale. Harman and Clay indicated that this agreement was later found to be insufficient, and the parties effectuated a statutory merger on much the same basis in December, 1970. Testimony from Harman, Clay and Dooley indicates that it was made clear to DMIC that the true holdings of Perpetual had not been legally determined and that any estimate of those holdings was not guaranteed by Harman or Clay. Thus facts are asserted that would establish a possible later understanding that formed the actual agreement between the parties.
 
 
 8
 These as well as many other assertions concerning the agreement are evident in the record. Further, the depositions most critical to these facts were taken by defendant Chromalloy American Corporation and not by DMIC. Chromalloy's purpose in taking such testimony was not to discover the true agreement between the parties but only to discover Chromalloy's alleged role in those transactions. As such, the questioning was not calculated to fully present all the assertions of the plaintiffs in regard to representations by other defendants. On such a limited record that nevertheless contained serious disputes as to factual matters, the district court was not justified in taking this drastic summary action.
 
 
 9
 Therefore the orders of dismissal and summary judgment are hereby vacated, and the case is remanded to the district court for further proceedings consistent herewith.