Little REDHOUSE, Brady Tah, on behalf of themselves and others similarly situated, Plaintiffs-Appellees,

v.

QUALITY FORD SALES, INC., a Utah Corporation, and Thomas E. Redd, Defendants-Appellants.

No. 74–1190.

United States Court of Appeals, Tenth Circuit.

Argued Nov. 13, 1974.

Decided Feb. 3, 1975.

James Doyle, DNA People's Legal Services, Chinle, Ariz. (Eric Swenson, DNA People's Legal Services, Mexican Hat, Utah, on the brief), for plaintiffs-appellees.

Dean E. Conder, Salt Lake City, Utah (Arthur H. Nielsen, Salt Lake City, Utah, on the brief), for defendants-appellants.

Before SETH, BARRETT and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

Quality Ford Sales, Inc. (Quality Ford) and Thomas E. Redd (Redd), defendants below, appeal from an order granting plaintiffs' motion for summary judgment and the judgment that plaintiffs' cause of action be certified as a class action.

Appellees Little Redhouse (Redhouse) and Brady Tah (Tah), plaintiffs below, each purchased a pickup truck from Quality Ford. They thereafter sued defendants under the Federal Consumer Credit Protection Act, 15 U.S.C.A. § 1601 et seq. (hereinafter referred to as the "Truth in Lending Act" or the "Act"), and the Utah Uniform Consumer Credit Code (UUCCC) § 70B–1–101 et seq., U.C.A.1953, as amended, to recover statutory damages, attorney fees and costs, for defendants' alleged failure to comply with the disclosure provisions of the two Acts. The pertinent facts are not in dispute.

Appellees are Indians residing on the Navajo Indian Reservation in Apache County, Arizona. Quality Ford is a Utah corporation engaged in the sale of motor vehicles, doing business at Blanding, Utah, which is just north of the Navajo Reservation. Redd is the manager of Quality Ford and its principal owner.

On April 11, 1972, Redhouse purchased a 1966 Ford pickup truck from Quality Ford for $1,095.00. The sale was consummated with the help of an interpreter. The down payment due was $300.00. However, because Redhouse did not have the full $300.00, he was allowed to take delivery of the truck by paying $79.00 [1] down and executing and delivering a short-term interest-free note for $221.00. The note was due in three weeks, i. e., the first part of May, 1972. Redhouse paid it in full on April 24, 1972. It was

---

1. This amount is assumed because the record does not actually disclose that $79.00 was paid down. It does indicate, however, that $300.00 was due, and that $221.00 was deferred.

admitted by defendants' counsel that the financial statements and forms used by defendants to accommodate the handling of Redhouse's down payment and to consummate the sale were not in accordance with the Act or the UUCCC.

On May 30, 1972, Tah purchased a new 1972 Ford pickup truck from Quality Ford. The truck had a cash sales price of $3,695.00. The down payment due amounted to $1,062.00. Tah had only $800.00 for the down payment. However, she was permitted to take possession of the new truck by paying down $800.00 and executing and delivering a non-interest bearing 16-day note for the $262.00 balance due on the down payment. This sum was paid prior to its due date of June 15, 1972. It was admitted by plaintiffs' counsel that the financing statement given to Tah met all the disclosure requirements of the Act and the UUCCC, except as to the disclosure relative to the down payment. As with Redhouse, Tah's disclosure statement indicated that the full down payment had been actually received. There was no indication that a portion had been deferred. Full disclosure was accordingly not present on a single document as required by the Act in regard to either sale. However, full disclosure is present when all the forms used in each sale are considered in the aggregate.[2] No evidence was offered indicating that the defendants were proceeding in bad faith in the sales transactions or attempting to purposefully defeat proper disclosure requirements.

Following the submission of briefs and oral arguments on plaintiffs' motion for summary judgment and for the determination of a class action, the Trial Court ordered that the action be maintained as a class action pursuant to Rule 23(a) and 23(b)(3) Fed.R.Civ.P., 28 U.S.C.A., and entered judgment granting plaintiffs' motion for summary judgment. In granting the motion for summary judg-

ment, the Trial Court held, inter alia:

_ _ _ that plaintiffs' motion for summary judgment is in all respects granted, _ _ _

_ _ _ that the plaintiff, Little Redhouse, recover of the defendants, Quality Ford Sales, Inc. and Thomas E. Redd, jointly and severally, the sum of $394.80 with interest _ _ _ [and] costs of action and his reasonable attorneys' fees _ _ _

_ _ _ Brady Tah, recover of the defendants, Quality Ford Sales, Inc. and Thomas E. Redd, jointly and severally, the sum of $2,000 _ _ _ [and] her costs of action, and reasonable attorneys' fee as provided by law.

By so doing, the Trial Court awarded damages as authorized under both the Truth in Lending Act, and the UUCCC.

Appellants allege that the Trial Court erred in: (1) granting summary judgment; (2) determining that the suit may be maintained as a class action; (3) permitting recovery under both the Truth in Lending Act and the UUCCC; (4) holding that a single-payment, non-interest bearing note could not be included as part of the "cash down payment"; and (5) holding that Thomas E. Redd was individually liable under the Truth in Lending Act and the UUCCC.

## I.

Appellants contend that the Trial Court erred in granting summary judgment and thereby taking the case from the jury when there were genuine issues of material fact in dispute which should have been resolved by the jury. Rule 56(c) Fed.R.Civ.P., 28 U.S.C.A. provides that summary judgment is to be granted only if the pleadings, depositions, interrogatories, admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

2. These other forms included an "Invoice Order and Sales Agreement", "Customer Statement", and a note for Redhouse, and an "Invoice Order and Sales Agreement" and a complete disclosure statement in accordance with the Act and UUCCC for Tah.

Summary judgment cannot be awarded when there exists a genuine issue as to a material fact. Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), White Motor Co. v. United States, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963), United States v. Diebold, Incorporated, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962), Ando v. Great Western Sugar Company, 475 F.2d 531 (10th Cir. 1973). And it is not properly awarded when an issue turns on credibility. Eagle v. Louisiana and Southern Life Insurance Company, 464 F.2d 607 (10th Cir. 1972). Summary judgment does not serve as a substitute for trial, nor can it be employed so as to require parties to litigate via affidavits. Smoot v. Chicago, Rock Island and Pacific Railroad Company, 378 F.2d 879 (10th Cir. 1967). It is considered a *drastic* relief to be applied with caution. Jones v. Nelson, 484 F.2d 1165 (10th Cir. 1973), Ando v. Great Western Sugar Company, *supra.* Pleadings, therefore, must be *liberally* construed in favor of the party opposing summary judgment. Harman v. Diversified Medical Investments Corporation, 488 F.2d 111 (10th Cir. 1973), Smoot v. Chicago, Rock Island and Pacific Railroad Company, *supra.* Appellate courts must consider factual inferences tending to show triable issues in a light most favorable to the existence of such issues. Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 494 F.2d 168 (10th Cir. 1974).

By these standards, we must hold that the Trial Court erred in granting summary judgment. There was an unresolved question as to whether Redhouse purchased his pickup for personal use or for business use (and therefore exempt from the Acts). The issue was especially pertinent because the Act does "not distinguish between full-time and part-time businesses." Sapenter v. Dreyco, Incorporated, 326 F.Supp. 871 (E.D.La.1971)[3], cert. denied 406 U.S. 920, 92 S.Ct. 1775, 32 L.Ed.2d 120 (1972). In answer to the acknowledgement that if the Redhouse truck was purchased for business it would be outside of the Act, the Trial Court noted:

> It sounds to me as though you have an issue of fact on that.
>
> .    .    .    .    .
>
> We are going to have to leave that to the jury.

Notwithstanding the above observation, however, the Trial Court nevertheless granted summary judgment for Redhouse, after erroneously excluding offered testimony of a conversation between Redd and Redhouse via an interpreter involving the very issue previously referred to.

The error in granting summary judgment to Redhouse was later compounded when the Trial Court observed from the bench in relation to Redhouse's credibility:

> I have had a lot of experience with these Navajos and Hopis, and I have never seen an occasion yet when I didn't think they told the truth. This is an example of that.

The record discloses that the Trial Court's impetus to grant summary judgment was not predicated on an unbiased reliance upon the facts presented. The record reflects that the Trial Court unequivocally stated that "prior injustices" to the American Indian mandated recovery for Redhouse and Tah. The Court said:

> We are dealing here with Indians, native Americans, who do not understand our language. They do not know anything about the Federal Reserve Board. They do not know anything about the Truth in Lending Act. They do not know about the Utah Act that adopts the Congressional Act. They do not know anything about the way these Anglos, they call us, trade and deal.
>
> The one thing they understand is that they get taken advantage of. They understand that in pretty good shape. We haven't dealt with them fairly. We haven't treated them right.

---

**3.** Affirmed per curiam at 450 F.2d 941 (5th Cir. 1971) prior to the denial of certiorari.

I think it behooves us in our business transactions with those people to go the last mile, and I am not going to draw any fine distinctions that will prevent that being done, so far as this court is concerned, because this is just the beginning of this.

The Trial Court cannot utilize the power of summary judgment to punish defendants-appellants Quality Ford and Redd for all "prior injustices" allegedly visited upon American Indians. In view of the existence of genuine issues of material fact in the case at bar, the Trial Court's personal assessment and determination of Redhouse's complete credibility, and the Trial Court's obvious prejudice against the defendants-appellants based upon a broad sweeping determination of "prior injustices", with no evidence of direct relationship to this action, we must hold that the summary judgment granted was unwarranted, unsupported by the record, and a clear abuse of judicial discretion.

■ We reverse and set aside the summary judgment with respect to Tah. We reverse the summary judgment with respect to Redhouse, and remand for a complete determination of whether Redhouse purchased his truck for commercial or personal use. Since the vehicle purchased herein was a truck, the presumption would be, absent contrary proof, that it was purchased for commercial use, and as such, the transaction would be exempt from the Act. This necessarily follows since an exemption from the Act arises whenever the vehicle usage is "predominantly" commercial and it need not be "entirely" commercial.

## II.

Defendants contend that the Trial Court erred in determining that plaintiffs' cause should proceed as a class action. We agree.

■ The Trial Court specified plaintiffs' cause of action as a class action upon plaintiffs' bald allegation that 80–90 others had "deferred payment violations" [improper disclosure of down payments] and "anybody involved in those transactions is allowed to be a member of the class." The ruling was obviously predicated in part on the Trial Court's distaste for handling 80–90 individual suits together with the Court's volunteered determination that the plaintiffs' principal problem was the White man:

> I don't like the idea of inviting 80 or 90 people to file individual suits I have to handle.

> \* \* \* \* \* \*

> What I had in mind was that the paper work is what we are concerned with, and it isn't necessary to have a jury determine what appears on the documents. This is a matter of law. The Court reads the documents.

> It looks to me as though this isn't just a class action between Americans who are college graduates and business people and knowledgeable, understanding the language—this involves these people down on the Reservation who have problems, and their principal problem is White people. That has always been the Indians' problem, the White people. They were getting along pretty good on the North American Continent before we got around here, and they have gotten along pretty bad ever since, outrageous.

Under these circumstances the specification of the plaintiffs' cause of action as a class action was unwarranted, unsupported by the record, and a clear abuse of judicial discretion. We noted in Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968), cert. denied 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969):

> Before a class action can be established under (b)(3) it is necessary to find, first, "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and second, "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." 402 F.2d 94 at 98.

Nothing in this record evidences that a class action would be "superior" to other

available methods for the adjudication of the controversy presented, and the burden is on the person requesting class action specification to establish that all the requirements therefor are met. Albertson's, Inc. v. Amalgamated Sugar Company, 503 F.2d 459 (10th Cir. 1974), Rossin v. Southern Union Gas Company, 472 F.2d 707 (10th Cir. 1973). Significantly, while we noted in Wilcox v. Commerce Bank of Kansas City, 474 F.2d 336 (10th Cir. 1973), that a class action *might* be proper under the Truth in Lending Act, we affirmed the denial of a class action because it had not been established that a class action would be superior to other available procedures. This holding was further buttressed in Stevens v. Rock Springs National Bank, 497 F.2d 307 (10th Cir. 1974), wherein we noted that "factual variations" would probably "affect the rights and liabilities of the parties" and that such variations "would be sufficient reason to deny the class action." The same rationale is valid here.

■ A class action is not superior to other available procedures for the fair and efficient adjudication of cases under the Truth in Lending Act. Rodriguez v. Family Publications Service, Inc., 57 F.R.D. 189 (C.D.Cal.1972); Ratner v. Chemical Bank New York Trust Company, 54 F.R.D. 412 (S.D.N.Y.1972). Then, too, the legislative intent of the Act was to utilize "private attorneys general". Young v. Trailwood Lakes, Inc., 61 F.R.D. 666 (E.D.Ky.1974); Turoff v. Union Oil Company of California, 61 F.R.D. 51 (N.D.Ohio 1973). The unwarranted utilization of class actions in actions brought under the Truth in Lending Act often penalizes the opposing party since class action specification is not dependent on the merits of a case. Miller v. Mackey International, Inc., 452 F.2d 424 (5th Cir. 1971); Bogosian v. Gulf Oil Corporation, 62 F.R.D. 124 (E.D.Pa.1973). See also Esplin v. Hirschi, *supra*.

■ Furthermore, class actions are not proper in cases such as the one at bar, where the action is predominantly for monetary damages. Richardson v. Hamilton International Corporation, 62 F.R.D. 413 (E.D.Pa.1974). See also Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2nd Cir. 1968), reversed on other grounds 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

The Trial Court erred in specifying plaintiffs' cause as a class action.

We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule by allowing a representative plaintiff to secure the benefits of a class action without first satisfying the requirements for it. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, at 177, 94 S.Ct. 2140, at 2151, 40 L.Ed.2d 732 (1974).

### III.

■ Appellants contend that the Trial Court erred in permitting recovery under both the Truth in Lending Act and the UUCCC. This point of view was initially recognized by the Trial Court:

Ordinarily we don't allow a party plaintiff to recover twice. If he is compensated for his damages once, we don't let him reap a reward.

_ _ _ At this point I think one recovery is all you are entitled to.

In reversing its position the Trial Court later noted:

I think I am going to allow the recovery under both. And you can have the Circuit tell you.

\* \* \* \* \* \*

They are sort of a lawless bunch. They might let you off the hook on that.

Although a violation of the UUCCC also constitutes a violation of the Federal Act because the Utah Department of Financial Institutions, pursuant to its rule making authority, has incorporated Regulation Z into the state regulations, we hold that the Trial Court erred in awarding any damages. In light of the facts

of this case the award of damages was improper.

In the case at bar even though there were certain acknowledged technical violations of the acts, *no harm resulted or flowed from them and no damages of any kind were established.* It is clear that the plaintiffs-appellees did not read their contracts prior to execution by their friends. Under those circumstances, any omission of information required by the Truth in Lending Act, Regulation Z, or the UUCCC could not have affected their decision to enter into the contracts, nor could it have induced their friends to execute the contracts for them. Rodriguez v. Family Publications Service, Inc., *supra.* This is the more compelling here in light of the fact that the plaintiffs initiated the negotiation with Quality Ford and Redd to purchase their trucks. The sales contracts and other forms were voluntarily executed.

We recently held in Littlefield v. Walt Flanagan and Company, 498 F.2d 1133 (10th Cir. 1974), that the Truth in Lending Act is a remedial act which must be liberally construed to effect the intent of Congress. Even so, we specially held that the *purpose* of the Act is to assure that the consumer debtor is fully aware of the cost of his credit. Umdenstock v. American Mortgage & Investment Co. of Oklahoma City, 495 F.2d 589 (10th Cir. 1974), W. T. Grant Company v. Commissioner of Internal Revenue, 483 F.2d 1115 (2nd Cir. 1973), Wachtel v. West, 476 F.2d 1062 (6th Cir. 1973), cert. denied 414 U.S. 874, 94 S.Ct. 161, 38 L.Ed.2d 114 (1973). The Act is basically a *disclosure* act, Mourning v. Family Publications Service, Inc., 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973); Burgess v. Charlottesville Savings and Loan Association, 477 F.2d 40 (4th Cir. 1973). As such its purpose is remedial and not punitive. Bostwick v. Cohen, 319 F.Supp. 875 (N.D.Ohio 1970). In this vein, although the Act should be strictly construed, it would not serve the cause of justice to enforce the Act so as to achieve a means of harassment, oppression, or unjust enrichment. Shields v. Valley National Bank of Arizona, 56 F.R.D. 448 (D.C.Ariz.1971). As the *Shields* court noted:

At a time when large business firms in general appear to be a scapegoat for a great many of our Nation's problems, the Court should not gratuitously add the final straw. The Truth-in-Lending Act has laudible purposes and should be strictly enforced by the Courts, but it should not be allowed to be used as means of oppression or harassment or unjust enrichment. An interpretation of the Act to allow class actions, such as sought by Mr. Shields, could be the means of curing an illness by killing the patient and in the process promoting unnecessary litigation mainly for the benefit of a few lawyers ready and willing to promote such cases. 56 F.R.D. 448 at 451.

The aforementioned authorities are common sensed and persuasive. No harm arose from the appellants' technical violations of the Act and the UUCCC. The appellees were provided with complete disclosure via the documents utilized by appellants. On the totality of the facts and circumstances of this record, we hold that the damages were improperly assessed under the Acts and must be vacated. In so holding we are aware that the damages assessed herein are not of a compensatory nature, but have their genesis as a civil penalty, and that, accordingly, harm need not be shown.

## IV.

Appellants contend that the Trial Court erred in holding that a single-payment non-interest bearing short-term note could not be included as part of the "cash down payment." The Trial Court held, in effect, that each of the two sales involved here violated the Act because the recorded cash down payment figure set forth on the documents was inflated, since it did not acknowledge that portion which had been deferred. It is uncontested that appellants allowed appellees to take delivery and full possession of the vehicles, by crediting them with full

down payments including the deferment of a portion thereof via the short-term non-interest bearing notes. The record reflects that this was an established accommodation that appellants regularly afforded their buyers.

Appellees rely on Gilbert v. Wood Acceptance Co., 486 F.2d 627 (7th Cir. 1973) and Bratta v. Caruso Car Co., 166 Cal.App.2d 661, 333 P.2d 807 (1958), as supportive of their contention that the recording of a purchase document reciting receipt of a higher down payment than that which was actually received violates the Act. We agree that these authorities are supportive of the proposition urged. However, we are persuaded that these decisions do not serve the cause of basic fairness and justice where, as here, full disclosure was afforded via the documents used and where, as here, no harm was done to the appellees, and where, as here, a damage award would not be required to make the plaintiffs whole, but would afford them an unjustifiable windfall.

We decline to adopt the rule adopted in *Gilbert* and *Bratta.* In cases where full disclosure is present, as here, we hold that it is proper to categorize deferred short-term non-interest bearing portions of a down payment, as reflected in the subject notes, as exempt from the strict reporting provisions of the Act.

In Umdenstock v. American Mortgage & Investment Co. of Oklahoma City, *supra,* we held that certain escrow accounts employed to pay taxes, assessments and insurance on mortgaged property are exempt under the Act, 15 U.S. C.A. § 1605(e)(3), because the annual percentage rate charged was based on the amount financed. By analogy we observe that the amount *financed* herein was the amount remaining due after the cash down payment was deducted. We cannot conclude, as did the *Gilbert* court, that Congress intended to impose fines on persons similarly business oriented as the appellants herein, who, in the extension of credit, defer a portion of a down payment, after having fully disclosed their credit terms.

No claim was advanced by plaintiffs-appellees—nor could it be advanced—that they were not fully aware that defendants-appellants were deferring a portion of their down payment, so that they could take delivery of the trucks. Under these circumstances, we hold that deferred down payments, arrived at in the normal course of every day, good faith established business procedure, are exempt from the strict reporting conditions of the Act and the UUCCC, when evidenced by the short-term, non-interest bearing nature of the notes utilized here. This result is consistent with the exemption from liability afforded creditors under Section 1640(c) of the Act, who, notwithstanding a good faith effort to comply and disclose, encounter a violation of the Act.

## V.

Appellant Redd contends that the Trial Court erred in holding him individually liable under the Act and the UUCCC. We agree.

Under both Acts, liability attaches to any "creditor" who fails to comply with the disclosure provisions. Nothing in this record discloses other than that Redd was acting solely as the manager and principal owner of Quality Ford. The record is devoid of any evidence supportive of the theorization that Redd *personally* extended credit. We hold that the Trial Court erred in finding Redd individually liable.

The judgment is reversed with respect to plaintiff-appellee Brady Tah and defendant-appellant Thomas E. Redd. The judgment holding that the cause should proceed as a class action is reversed. The judgment is reversed with respect to plaintiff-appellee Little Redhouse and remanded for further proceedings consistent with this opinion.

SETH, Circuit Judge (concurring specially):

I concur in the results reached by Judge Barrett in his opinion filed herein, but I would like to express somewhat different reasons.

In my view, the summary judgment entered by the trial judge must be set aside for the reason that its entry was contrary to Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732, in that the class action matter had not then been fully acted upon. *See also* Sarasota Oil Co. v. Greyhound Leasing & Financial Corp., 483 F.2d 450 (10th Cir.). Also, it should be set aside as to plaintiff Little Redhouse because a substantial factual issue remains unresolved. This was whether his purchase of the vehicle was exempt by the Act because it was for a commercial use. There is a conflict in the record as to statements on this subject made at the time of purchase. These several problems are sufficient to raise the fact issue. At the "hearing," conflicting evidence was offered.

As to plaintiff Brady Tah, there was no actual issue of fact so raised, but in view of *Eisen,* the judgment as to her should be also set aside in order that the class action matter can be first decided.

As to the class action issue generally, the determination, to the limited extent it has been made, should be set aside and new and proper findings made by the trial court as to all the required elements. This also should be done in the sequence suggested by *Eisen.* The recent changes brought about by P.L. 93–495, since some portions are applicable to this case, must be considered by the trial court.

The matter of damages is in my opinion determined solely by the statute, and actual damages are not a consideration. Again, see the changes in section 408(a) brought about by P.L. 93–495 as to limitations on amounts.

The deferral of a portion of the down-payment without cost to the buyer does not in my opinion constitute a violation of the statutory requirements. The Act is intended to require a disclosure of the cost of the credit, and no such cost is involved as to this element. The note was accepted as downpayment together with whatever else was so received. This may be done under the Act.

I agree that the individual defendant, Thomas E. Redd, cannot be held liable under the Act.

There is an additional factor in the judgment of the trial court which should be considered. This is the matter of attorney fees awarded to plaintiffs. Such fees do not automatically follow a judgment without an inquiry into the question of whether there is in fact an attorney-client relationship giving rise to an understanding that the client owes a fee, or a contingent fee arrangement. Also when fees are allowed, they can only go to an individual or an organization permitted or authorized to receive such fees, including those publicly funded.

WILLIAM E. DOYLE, Circuit Judge (dissenting).

I respectfully dissent.

## I.

### THE LIABILITY QUESTION

In the case of *Little Redhouse* all disclosures were not made on one document as required by 12 C.F.R. § 226.8(a) and the UUCCC, but even considering all of the documents together the required disclosures were not made. In any event, there is good reason for requiring the disclosure to be on one document. It is difficult enough to fathom the transaction by looking at one document—it is impossible by referring to a number.

Redhouse paid $300.00 in cash and, in addition, he signed a note at time of closing in the amount of $221.00. The full deferred purchase price was not disclosed. As to his $221.00 note which was payable on or before May 5, it was not disclosed in the documents that no interest would have been chargeable if the money was paid by May 5. Otherwise, the interest would have been 18% per annum. This appeared in the note. Admittedly this Redhouse transaction was ambiguous and gave rise to a violation of the law.

Plaintiff *Brady Tah* purchased a new pickup truck for a cash price of $3695.00. A down payment of $1062.00 was re-

quired. She paid $800.00 cash and signed a note for the remainder. The Invoice Order indicates that the note was for $288.00, or $26.00 more than the remainder of the down payment.[1] The amount outstanding on the note was more than twice the amount of any regularly scheduled payments. Hence, these amounts were improperly treated as part of the down payment. *See* 12 C.F.R. § 226.504. This confusion did not conform to the statutes.

It is not possible to tell for certain whether the documents as a whole in the case of Brady Tah show a full disclosure. In any event, the failure to disclose on one document is sufficient to constitute a violation, 12 C.F.R. § 226.8(a).

## II.

## THE GRANT OF SUMMARY JUDGMENT

There does not appear to be any genuine issue of fact. The only possible dispute pertains to whether it is a *consumer* credit transaction and this requires that the property which is the subject of the transaction be primarily for personal, family, household or agricultural purposes. The majority has ruled that there was a genuine issue of fact on this.

Redhouse submitted an affidavit that he intended to and did use the vehicle for personal, family and household needs. Defendant relied on an affidavit of a salesman which is not in the record but which is said to allege that Redhouse told the car salesman he wanted the truck for his work. Defendant Redd offered to testify to this statement, but this was excluded as hearsay because Redhouse does not speak English and the alleged statement was made through an interpreter who was not called as a witness. At trial Redhouse denied making such a statement.

It seems questionable that the Redhouse out of court statement which depends on a correct translation from the

Navajo language could be regarded as substantial evidence sufficient to create a dispute even had it been admitted in evidence, and perhaps it should have been received for whatever it was worth. (Why, however, should such a big thing be made of this issue? The statutes were designed to protect people who lack knowledge of financial matters. Also, it is easy enough to recognize judicially that the Indian people use trucks for *every* purpose.)

The only objective evidence which is countervailing is that Redhouse said that his occupation was carpenter. That statement does not mean that he used his truck in his work. He said at the trial that he used the truck to drive to and from work, but that did not raise an inference that it was not used for personal purposes. It is noteworthy also that this did not emerge as an issue in the pleadings.

## III.

## THE CLASS ACTION ISSUE

There is no persuasive reason why this cannot be treated as a class action under Rule 23(b)(3). Contrary to the statement in the majority opinion, damages *are* obtainable under a subsection (3) class action. However, the question is not before us on appeal in any event because a certificate has not been issued pursuant to 28 U.S.C. § 1292 by the trial court and the question is interlocutory. The class action certification, if it could be called such, is at this juncture incomplete. There have not been findings as to the criteria set up in Rule 23 for a class action. Therefore, this part of the cause ought to be remanded to complete the Rule 23 requirement if it is going to be a class action. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) is relied on by the majority opinion as precluding a decision on the merits prior to the certification of

---

1. There is some dispute as to whether the note, which is not in evidence, was for $288.00 or $262.00. Plaintiffs contend the note was treated improperly on the disclosure statement even if it was for $262.00.

the class action. I do not so interpret *Eisen.* The Supreme Court in that case was preoccupied with the payment of notice costs and ruled that a preliminary trial on the merits could not precede determination of whether it was a class action. To hold that the judge must never take up any aspect of the merits of the case until the class action issue has been determined is beyond the scope of *Eisen.*

## IV.

### THE DAMAGE QUESTION

It was not necessary to establish that actual damages were suffered. 15 U.S.C. § 1640(a), UUCCC and U.C.A. § 70B–5–203 (1953 as amended) provide for liquidated damages and thus dispense with the need for proving actual damages.

## V.

### LIABILITY OF DEFENDANT REDD

Since it is questionable as to whether Mr. Redd was a creditor under the Act and the regulations, it would seem proper to excuse Mr. Redd from liability personally. Inasmuch as the Act does not identify employees or corporate agents as creditors, it follows that these individuals cannot be held responsible.

\*   \*   \*   \*   \*   \*

Therefore, I would affirm the judgments in favor of Little Redhouse and Brady Tah as against Quality Ford Sales, Inc. Inasmuch as the class action aspect is not ripe, the propriety of the class action is not before us. This aspect ought to be remanded for further proceedings.

My basic objection is to the narrow view of liability taken by the majority.