**Billy D. BEARDEN, Plaintiff,**

**v.**

**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY,
Defendant.**

Civ. A. No. 84-1777.

United States District Court,
D. Kansas.

April 15, 1986.

David K. Clark, Fredonia, Kan., for plaintiff.

Richard A. Loyd, Wichita, Kan., for defendant.

## OPINION AND ORDER

THEIS, District Judge.

Pursuant to the Court's order of October 8, 1985, both sides have rebriefed the issue of statutory notice of termination. The Court, having reviewed these briefs and examined the law on its own, is now ready to rule on defendant's motion for summary judgment.

A review of the background facts as set out in the Court's order of October 8, 1985, would be helpful. On March 31, 1980 J.T. Burkey and Dena F.J. Burkey gave defendant John Hancock a first mortgage on certain farm ground to secure a loan. In July of 1981, the Burkeys orally leased part of that farm ground to plaintiff Billy Bearden for five years. Bearden planted an alfalfa crop on the land. The Burkeys subsequently defaulted on the loan, and foreclosure proceedings were initiated by John Hancock on June 18, 1982. Plaintiff Bearden learned of the foreclosure proceedings, and on September 19, 1983 he contacted John Hancock by phone to notify them of his status as lessee and inquire about a continuation of the lease. This call was the first indication that John Hancock had of Bearden's lease. An amended journal entry of judgment on the foreclosure was filed on October 7, 1983, against the Burkeys and three junior lienors of record who had been added later by an amended pleading, but not including Bearden's interest. Notice of sheriff's sale was duly published, and on November 15, 1983 the property was sold to John Hancock. Bearden was present at the sale. On May 15, 1984, the six month redemption period expired, and despite indications by Bearden that he was interested in continuing to lease the land, John Hancock took possession to Bearden's exclusion on that date. Bearden harvested his immature alfalfa crop prior to that date in order to recoup some return on his investment.

The matter initially came before the Court on John Hancock's motion for summary judgment. John Hancock asserted its right to judgment as a matter of law on the following grounds: that it was only required to name as parties to the foreclosure proceedings interest holders of whom it had notice prior to the date of judgment foreclosing its mortgage (in this case March 28, 1983, well before defendant learned of the lease on September 19, 1983); that Bearden was barred by laches because he learned of the foreclosure proceedings no later than September of 1983 but did not file this action for damages until September of 1984; that Bearden was also estopped from asserting his claim in court because he had acknowledged John Hancock's rights to the property in his attempts to lease it from them; and that Bearden had not suffered any losses as a result of John Hancock's actions here. The Court in its earlier order of October 8, 1985 rejected defendant's arguments on laches and estoppel, was not persuaded by both parties' arguments that the law of foreclosures as it related to lienholders was equally applicable to lessees, and found that in any event Bearden's action for damages for wrongful termination of the remaining three years of his five year oral lease was barred as to the last two years by the statute of frauds. But as to the actual year of termination, the Court found that the seminal law was Kansas' statutory notice of termination provision; more specifically, K.S.A. §§ 58–2506 and 58–2506a. As the parties had not referred to these statutes, the Court ordered them to rebrief the issue in light of their provisions. The Court now has those briefs, and can conclude its ruling on defendant's motion for summary judgment which it began in the earlier opinion.

The Court has previously set out in full the standards for considering a motion for summary judgment, and will only highlight those standards now. Summary judgment is appropriate only if there "is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is a drastic remedy that should be granted only with caution. *Redhouse v. Quality Ford Sales, Inc.*, 511 F.2d 230, 234 (10th Cir.1975).

The statutes under consideration provide in relevant part:

§ 58–2506(a). Except as may be otherwise provided by this section or by a written lease signed by the parties thereto, in cases of tenants occupying and cultivating farms the notice to terminate such a farm tenancy must be given in writing at least 30 days prior to March 1 and must fix the termination of the tenancy to take place on March 1.

§ 58–2506a(b). Where a farm tenancy is terminated by the landlord on March 1 pursuant to subsection (a) of K.S.A. 58–2506, and the tenant planted and obtained a satisfactory stand of alfalfa the preceding fall, the landlord shall pay the tenant the fair and reasonable value of all services performed in preparing and planting the alfalfa and for all of the tenant's expenditures for seed, fertilizer, herbicide, or pest control substances.

It has been apparent from the beginning, and neither side disputes, that these statutes were not complied with in the instant case. Plaintiff argues in his brief that the statute applies to this matter. He further argues that under existing law, during the time of redemption the Burkeys and not John Hancock were entitled to the rents and profits from the property, and therefore only the Burkeys could have given the notice to terminate prior to May 15, 1984, when the redemption period expired. Therefore, since John Hancock did not and could not give notice of termination "at least 30 days prior to March 1", the ouster of Bearden by John Hancock on May 15 was legally improper. John Hancock disputes the relevance of the statutes to the instance of a foreclosure where the foreclosing mortgagee is both prior in time to the lease and not a party to the lease. Defendant then restates its arguments that the foreclosure of its mortgage terminated plaintiff's lease. This Bearden disputes on the now familiar grounds that he was not a party to the foreclosure proceedings.

The Court declines to reach the issue of whether a lessee is a necessary party to a foreclosure proceeding. The Court notes other cases which have held that foreclosure of a prior mortgage terminates the lease. See, e.g., Wilson v. Campbell, 244 Ark. 451, 425 S.W.2d 518 (1968); Kage v. 1795 Dunn Road, Inc., 428 S.W.2d 735 (Mo.1968); Prudential Ins. Co. of Am. v. Bull Mkt. Inc., 66 Ohio Misc. 9, 420 N.E.2d 140 (1979). In none of these cases, however, was the question of farm leases in light of a state farm lease termination statute raised. Although other states have statutes similar in varying degrees to K.S.A. § 58–2506, see particularly IOWA CODE ANN. § 562.5, the Court has discovered no cases which address this question, either in Kansas or in other states. The Court therefore treats this as a case of first impression.

To determine how Kansas courts would most likely rule on this question, the Court first looks at the legislative history of this statute. This statute, or a forerunner of it, has been a part of Kansas law for over 100 years. The first codification of it can be found in G.S. 1868 ch. 55 § 6, which simply states: "In the case of tenants occupying and cultivating farms, the notice must fix the termination of the tenancy to take place on the first day of March." Save only for an amendment in 1919 relating to holdover tenants (L. 1919, ch. 224 § 1), the statute remained unchanged until 1975. The past ten years have shown a great degree of legislative activity regarding this provision, indicating to this Court that the statute is not merely an ancient and outdated holdover, but one expressing continued legislative interest in this area. It is apparent that the purpose of the legislature in enacting these provisions is to make an exception to the general rule of lease terminations. This is especially evident in the 1978 amendment, when in addition to making changes in 58–2506, the legislature in the same bill amended 58–2505 to make clear that farm tenancies were to be treated differently from the general rule. L. 1978, ch. 215 § 1.

It is not hard to discern why the legislature chose to single out farm tenancies for preferential treatment. Unlike virtually

any other commercial lease, an agricultural lease is characterized by all the expense coming first, and all of the proceeds from the endeavor only coming at the end. A farmer prepares his land; purchases seed and plants it; applies fertilizer, herbicide and pesticide; and possibly harrows weeds and grasses out of the crop rows before he realizes any return on his investment. To allow a landowner, after the tenant has gone to all of this expense and work but before he has been able to harvest a mature crop for his reward, to summarily cancel the lease and assume for himself the growing crop, would be the height of inequity and unjust enrichment. To require the landowner to suffer his tenant's presence on the land until the crop the tenant has nurtured can be harvested by him is at worst a slight burden on the owner. The statute allows him to remove the tenant in time to begin preparations for the next season's crop, and the owner has no legitimate right to possession of the farmground before then.

In the case of an alfalfa crop, this logic extends even further. Alfalfa is a perennial crop. Once a stand of alfalfa feed is established, a crop can be harvested from the stand every year for seven to ten years, with little additional work required. In recognition of the differences between annual crops and an alfalfa crop, the legislature enacted K.S.A. § 58–2506a in 1978. That statute balances competing interest between the tenant farmer, who has gone to the added expense of establishing an alfalfa stand in the expectation of several years' crops from it, and the landowner who does not want to find his oral lease transformed into one which he cannot cancel for several years. 58–2506a allows the owner to cancel a farm tenancy where an alfalfa crop is established in the same manner and time any other farm tenancy could be canceled, but requires the owner to reimburse the tenant for certain expenses incurred in establishing the stand of alfalfa. L.1978, ch. 215 § 3.

■ The remaining question the Court must address in its analysis is whether the legislature would have intended the preferential treatment of farm tenancies to extend to an instance such as this one, where a foreclosing mortgagee is canceling a farm lease made not by it, but by its mortgagor. The Court is convinced that the legislature would have so intended. Indeed, the Court is at a loss, given the above analysis, to conjecture any reason why the legislators would have considered this situation different from any other. Despite John Hancock's protest that there is no plausible alternative to its position (Dk. 32, p. 5), the Court does not see how defendant would be unjustly harmed by this ruling. Under 58–2506, they lose an alfalfa crop that was planted and nurtured before they had the right to possession of the property. Under 58–2506a they must pay the value of services performed for establishing the crop in exchange for an existing alfalfa crop for several succeeding years on land that is now theirs. The Court therefore finds that K.S.A. §§ 58–2506 and 58–2506a are as equally applicable to a farm lease on foreclosed land as they would be to any other farm lease. Because of the admitted failure of defendant to comply with the provisions of these two statutes, the Court must deny its motion for summary judgment.

■ The Court notes in closing that plaintiff's reply memorandum, Dk. 37, seems to indicate that the plaintiff misunderstood a prior ruling of this Court in its October 8, 1985 order. Bearden refers on p. 3 to the "suggestion" made there by this Court that the five year lease was void under the statute of frauds. The Court would point out that its order there did not so suggest, it clearly held, that the final two years of plaintiff's five year oral lease were unenforceable under the statute of frauds, and granted the defendant summary judgment as to those years. The Court does not now see a motion for reconsideration of that holding, nor would it grant such a motion. The Court understands plaintiff's argument on this point, that not only was the statutorily required written notice of termination not given for a March

1, 1984 termination date, but it likewise was not given for a March 1, 1985 or a March 1, 1986 termination date. The Court will not allow that argument to give a windfall to the plaintiff in the nature of his full three years. As to the 1985 and 1986 years, defendant's only failure was lack of a *written* notice. None of the equities otherwise on the side of the tenant farmer, as discussed earlier in this opinion, exist for such years. Clearly and indisputably, Bearden had notice well in advance of "30 days prior to March 1" for both of those years. John Hancock's failure to put such notice in writing (if indeed it did so fail, the Court has not been informed one way or the other on this point) will not of itself be grounds to award those final years to Bearden. Perhaps nothing is more elementary in law than the ancient requirement that a lease of lands extending more than one year must be in writing in order to be enforceable. It may have been more accurate for the Court to have initially ruled that *all* of plaintiff's lease was void under the statute of frauds, but that the immediate year was thereafter actionable under 58–2506. But the Court is not interested in such legal semantics. The Court would not find John Hancock's failure to give written notice for 1985 or 1986, based on its mistaken presumption that the statute so requiring did not apply to them, grounds for saving those years of plaintiff's lease. The Court does not by this ruling mean to imply that the requirement for a *written* notice is unimportant or dispensable. It merely finds, on the facts and equities of this particular case, that occasion for that requirement did not arise as to 1985 or 1986.

With the denial of defendant's motion for summary judgment, plaintiff's motion for trial by jury is now ripe for decision. Defendant John Hancock opposes this motion. John Hancock first argues that this case arises out of the foreclosure of a mortgagor's equity of redemption, and as such is an equitable matter not traditionally triable to a jury. Moreover, defendant correctly notes that plaintiff's request for a jury trial is untimely under Rule 38(b) of the Federal Rules of Civil Procedure. Nevertheless,

this Court has authority under Rule 39(b) of the Federal Rules of Civil Procedure to exercise its discretion in permitting a jury trial. The question, then, becomes whether this Court should exercise its discretion in this case. A number of cases in this district have permitted jury trials after untimely demands when no "compelling reasons" have been demonstrated for holding otherwise. *See, e.g., Simmons v. First Mid America, Inc.,* No. 84–1180 (D.Kan., *unpublished,* December 12, 1984); *Holiday Inns, Inc. v. Sifers Chemicals, Inc.,* No. 80–2430 (D.Kan., *unpublished,* September 2, 1982).

■■■ John Hancock also opposes a jury trial on the grounds that the remaining issues involve complex legal questions. The Court finds that, in light of this foregoing order, the legal questions are no longer that complex. Comparing the Pretrial Order in this case with the subsequent orders of this Court, it appears that the primary questions left to be decided at trial are compliance with statutory requirements for notice of farm tenancy termination, damages for non-compliance, and whether plaintiff is entitled to punitive damages. The Court would note parenthetically, and without now ruling, that John Hancock's mistaken assumption that the statutes here in question did not apply to them is probably not sufficient to submit a question of punitive damages to a jury, leaving even less for their consideration. Ultimately, the right to a jury trial depends on the nature of the issue to be tried. *Pomon v. General Dynamics Corp.,* 574 F.Supp. 147 (D.R.I.1983). The Court finds the remaining issues to be appropriate for jury consideration. Moreover, the Court finds no "compelling reasons" not to grant plaintiff's request for a jury trial.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment on the issue of plaintiff's claimed damages arising out of plaintiff's loss of his lease on the Burkey farmland for the year 1984 is hereby denied.

IT IS FURTHER ORDERED that plaintiff's motion for trial by jury is hereby granted.