PAUL KELLY, JR., Circuit Judge,
concurring in part and dissenting in part.
I concur in the court’s opinion reversing the district court’s judgment insofar as it awards insurance costs in addition to diminution in value damages. I dissent from the court’s affirming the judgment awarding $8,200,607.40 in diminution in value damages. In my view, such a large award is clearly erroneous for three reasons.
First, the district court’s diminution in value award is close to what the damages would have been if every Phoenix-area Garcia’s restaurant had been put out of business. At the pertinent time, Eateries (1) owned and operated 48 Garfield’s restaurants and two Pepperoni Grill restaurants, and (2) owned 100% of the stock of Fiesta Restaurants, Inc., a corporation that owned (a) five Phoenix-area Garcia’s restaurants, (b) a Carlos Murphy’s restaurant, and (c) an additional seven Garcia’s restaurants outside of Arizona. Aplt.App. 173-75, 182, 184, 205. Seven months before the incident, Fiesta had purchased a group of restaurants, including the Garcia’s chain, for a net price of approximately $4.6 million. Aplt.App. 175-76; Aplee. Supp.App. at 245, 274-75. Eateries’ own subjective estimate of the value of the five Phoenix-based Garcia’s restaurants was 6.6 times budgeted cash flow or approximately $8.46 million. Aplt.App. 422; see also Aplee. Supp.App. at 285 (company CEO suggesting a valuation multiple of 6.5 times budgeted cash flow).
Second, the district court determined that 100% of the diminution in value of the Eateries stock was attributable to the incident involving the Phoenix-based Garcia’s restaurants. By December 1998, Eateries owned and operated 64 restaurants; 14 had the Garcia’s name; with seven of those in Arizona, and five in the Phoenix area. However Eateries allocates its corporate expenses between its restaurants, the bulk of its revenues and earnings come from its non-Phoenix based Garcia’s restaurants, primarily Garfield’s. Likewise, the vast majority of the company’s productive assets are elsewhere. The company’s internal corporate, as well as its public, documents suggest a variety of reasons why its stock price might decline, including increased competition, Garfield’s declining same store sales in the third quarter of 1998, and a net loss for 1999 ($38,000) due to higher expenses, as compared with modest net income in 1998 ($1,183,000). Aplt. App. 320, 353, 369.
Moreover, even Eateries’ expert acknowledged that other factors such as competition would affect its stock price. *1239 Aplee. App. at 434 (“The price of stock is going to be affected by a number of things including the amount of debt employed in the company, the company’s earnings. There’s a number of factors.”), 457 (competition). Although the district court is free to reject contrary expert opinions, the failure to distinguish contrary evidence makes the district court’s “all or nothing” causation finding suspect. Essentially, the district court implicitly found that this is an unusual publicly-traded company whose stock price is unaffected by fundamental factors, market forces and earnings announcements.
Finally, the district court based its damage calculation on a value long before trial, February 1999. It seems to me that the Plaintiff has recovered the entire value of the five Phoenix-based Garcia’s restaurants, yet it still owns them and those restaurants retain significant value. The purpose of damages is make one whole, not provide a huge windfall. See Beck v. N. Natural Gas Co., 170 F.3d 1018, 1024 (10th Cir.1999); Redhouse v. Quality Ford Sales, Inc., 511 F.2d 230, 238 (10th Cir.1975).